24 301
48 358
24 301
51 499
24 301
71 279
24 301
73 339

GEORGE W. WREN AND GEO. W. CLAWSON, *Partners, &c.,* v. THE BOARD OF COMMISSIONERS OF NEMAHA CO.

1. DELINQUENT TAX LIST, *Publication of.* The boards of county commissioners of the several counties have the legal right to designate the paper in which the delinquent tax list shall be published.

2. STATUTES CONSTRUED; *Delinquent Tax List.* There is no necessary conflict between § 1, ch. 108, Laws of 1872, and any section of ch. 34, Laws of 1876. As both statutes can have full force and effect, the law of 1876 does not repeal or nullify the law of 1872; these statutes can be construed together, and made to harmonize. The county board designates the paper in which to publish the delinquent tax list, and thereby exercises part of the control conferred by § 1, ch. 108, Laws of 1872. The county treasurer, under its order, causes to be published in such paper the tax list, for the time and in the manner provided by law, and thereby discharges his official duty as required by § 107, ch. 34, Laws of 1876.

3. OFFICIAL PAPER, *Only One in Each County.* The statute contemplates the designation of only one official paper in each county for the publication of delinquent tax lists and treasurers' notices.

*Error from Nemaha District Court.*

ACTION brought by *Wren & Clawson,* late partners, against *The Board of Comm'rs of Nemaha Co.,* to recover $295.70 for the publication of the delinquent tax list of said county for 1878. Trial by the court at the April Term, 1880, and findings and judgment for the defendant. The plaintiffs bring the case here. The facts are fully stated in the opinion.

*Willard Davis,* and *W. W. Guthrie,* for plaintiffs in error.

*J. E. Taylor,* and *R. C. Bassett,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The county board of Nemaha county, on January 14, 1878, adopted the following resolution:

"Whereas, the statutes of Kansas provide that the board of county commissioners of the several counties of this state shall have exclusive control of all expenditures accruing, either in the publication of delinquent tax lists, treasurers'

notices, county printing, or any other county expenditures; and whereas, an underlying object of such power so conferred being the highest promotion of the best interests of the body politic; and whereas, the Seneca *Weekly Courier* and the *Nemaha County Republican*, papers published in Nemaha county, Kansas, respectively at Seneca and Sabetha, having general circulation in the county, and thus a medium of general information to the people of the county: It is hereby ordered by the board of county commissioners of Nemaha county, Kansas, that all county printing over which they, the said board, have control, shall be published in each of the above-named newspapers, from and after this date, the publisher of each paper obtaining for all of said matter so published, one-half legal rates, to be paid as authorized by the board of county commissioners, as provided by law; and that all orders and resolutions heretofore adopted by the commissioners' court of this county, in conflict with this order, be and the same are hereby revoked, and thus made null and void."

Of this resolution, Wren & Clawson, the plaintiffs, and the county treasurer of Nemaha county, had notice at the date of the publication of the delinquent tax list of 1878.

In 1879, the county treasurer, assuming that he had exclusive control of the publication of the delinquent tax list, furnished the list for 1878 to three papers of the county for publication, with notice that each would receive one-third of the legal rate allowed by law for such publication; and there was the further understanding with the plaintiffs, that if the other papers declined to publish the tax list upon these terms, that the plaintiffs should have the exclusive publication for their paper, and receive the full compensation allowed by law. The papers to which the list was given were, the Seneca *Weekly Courier* and the *Nemaha County Republican*, (the two papers designated by the county board,) and also the Seneca *Tribune*, published by plaintiffs. The list appeared in all the papers. The two designated by the county board have each received from Nemaha county one-third of the legal rate, and the one-sixth that would be still due each under the resolution referred to, is held in abeyance for further action. The plaintiffs presented their account on

January 14th, 1880, to the county board, for one-third of the legal rate provided by law. The claim was rejected, and payment refused. This action was then commenced to recover $295.70, being the full amount of fees provided by the statute for the publication of the delinquent tax list. The district court rendered judgment for the defendant for costs, and the plaintiffs bring the case here.

The question for our consideration is, whether the county board, or the county treasurer, has the legal right to designate the paper in which the delinquent tax list shall be published? Section 36, chapter 25, Compiled Laws 1879, being § 1, ch. 108, Laws of 1872, provides as follows: "The boards of county commissioners of the several counties of this state shall have exclusive control of all expenditures accruing, either in the publication of delinquent tax lists, treasurers' notices, county printing, or any other county expenditures." This law was enacted in 1865, (§ 1, ch. 29, Laws 1865,) was amended in 1868 by adding "provided, that all county printing shall be let to the lowest responsible bidder," (§ 36, ch. 25, Gen. Stat. 1868,) and in 1872 this proviso was stricken out; (§ 1, ch. 108, Laws 1872.) This section, substantially as it now stands, has been in force since 1865.

It is claimed by counsel for plaintiffs, that chapter 34, Laws 1876, relating to assessment and taxation, (ch. 107, Comp. Laws 1879,) confers upon county treasurers the exclusive control of the publication of the delinquent tax lists. One of the counsel, in his brief, to which we are referred, says: "Prior to the passage of chapter 34, Laws 1876, the county board had control, not only of all printing for which the county had to pay, but all, or nearly all, that was required by law to be done by other county officers in the discharge of their duties. But that act has made sad havoc of chapter 108, Laws 1872. It struck from section 1 of that chapter all the power conveyed in the language 'exclusive control of all expenditures accruing in the publication of delinquent tax lists or treasurers' notices,' and has taken from the board the power to control any printing which is

now directed by law to be done by other officers, and for which the county does not in fact pay." (Opinion of Atty. Genl., p. 61 of Second Biennial Report, 1879-80.) Counsel in this concedes that, prior to the adoption of the act of 1876 for the assessment and collection of taxes, county boards had control of the printing of the tax lists. The particular sections of the act of 1876 which are pointed out as giving to the treasurers the power of designating the paper in which those lists shall be published, are as follows:

" SEC. 106. The county treasurer shall, between the first and tenth of July in each year, make out a list of all lands and town lots subject to sale, describing such lands and town lots as the same are described on the tax roll, with an accompanying notice stating that so much of each tract of land or town lots described in said list as may be necessary for that purpose will, on the first Tuesday of September next thereafter, and the next succeeding days, be sold by him at public auction, at his office, for taxes and charges thereon. And if any county treasurer shall at any time discover that any tract of land or town lot had been omitted to be put on the list of .delinquent taxes and sold for any preceding year, the said treasurer shall be required to place such omitted tract of land or town lot on the list of delinquent taxes for the current year, and sell the same as directed by this act in other cases.

"SEC. 107. The county treasurer shall cause the said list, with the accompanying notice, to be published in some newspaper published in said county, or if no newspaper be published in said county, then in one of general circulation in his county, once in each week for four consecutive weeks prior to the day of sale; and shall also cause to be posted up a copy of said list and notice in some conspicuous place in his office.

"SEC. 108. Every printer who shall publish such list and notice shall, immediately after the last publication thereof, transmit to the treasurer of the proper county an affidavit of such publication, made by such person to whom the fact of publication shall be known; and no printer shall be paid for such publication who shall fail to transmit such affidavit within fourteen days after the last publication. The county treasurer shall also make, or cause to be made, an affidavit or affidavits of the printing of such list and notice as above

required; all of which shall be carefully preserved by him and deposited as hereinafter specified."

The position that any change was effected by these sections is wholly untenable, as these sections, or sections practically similar, were in force at the passage of chapter 108, Laws 1872, and were also in force as far back as 1860. (Comp. Laws 1862, ch. 197, §§ 36, 37 and 38.) Therefore, if prior to 1876, county boards had control of the publication of the tax lists, and the legal right to designate the papers in which those lists should be published, they continue to possess this power, as the statutes are virtually the same to-day as before the passage of the act of 1876.

Waiving, however, the concession of counsel and the dates of the enactment of these several sections, we see no difficulty in disposing of the case in favor of the power of the county board to designate the paper, under the well-settled rule for the legal interpretation of statutes. The rule is: All statutes *in pari materia* are to be read and construed together, as if they formed parts of the same statute, and were enacted at the same time. Within this rule the learned trial judge correctly held, that the county board designates the paper in which to publish the delinquent tax list, and thereby exercises the exclusive control over the expenditure for that purpose expressly provided for and in terms conferred by the act of 1872. The county treasurer, under such order, causes to be published in such paper the tax list, for the time and in the manner provided by law, and thereby fully discharges his official duty. With this construction, there is no conflict in the different sections. This construction harmonizes all the statutes, and gives force and effect to the language of each. The construction claimed for § 107, ch. 34, Laws 1876, by counsel of plaintiffs, nullifies § 1, ch. 108, Laws 1872, and thereby violates a cardinal principle of construction. Further, such construction, contended for by counsel, would give the sheriffs of each county the legal right to designate the papers which publish the notices of election, (Comp. Laws 1879, ch. 36, § 5,) and would also

give county clerks the right to designate the papers to publish road notices, the meetings of the county boards, and other advertisements which they are expressly required by the statute to print in some newspaper. (Comp. Laws 1879, ch. 89, § 3.) Thus the county board, the county clerk, the treasurer and the sheriff would each have a legal right to designate an official paper. This would lead to many complications, and to inextricable confusion. The statute does not demand or warrant such a construction. When the law says that the county treasurer shall "cause to be published," etc., and the county clerk shall "cause to be published," etc., and the sheriff shall "cause to be published," etc., it means that such officers shall publish their official notices and advertisements in the paper designated by the county board.

Counsel claim that there is no such thing as "the official county paper." (Opinion of Atty. Genl., p. 110, Biennial Report 1879-80.) This is a mistake. The paper designated by the county board for the printing of the official notices and advertisements of the various officers of the county, is in fact the official paper of the county. The statute expressly recognizes an official paper. Sec. 75e, p. 286, Comp. Laws 1879, reads as follows:

"The statement of the county treasurer, when completed, shall be published once in the official newspaper of the county, and a copy thereof posted on the inside of the door of the treasurer's office."

The next section of the same chapter further provides:

"Should any county treasurer neglect or refuse to make and publish the statement provided for in this act, he shall be liable to a fine of not less than twenty-five dollars for each and every day he shall refuse or neglect to make such statement, to be recovered by an action at law against such treasurer; said action to be brought in the name of the board of county commissioners of the proper county."

Counsel suggest that trouble would ensue under our ruling, if the county board failed to designate a paper in which the delinquent tax lists were to be published. We answer, that we are not to presume that public officers will fail to perform

their official duty. In any event, we have no more right to suppose that a county board will be guilty of official neglect or misconduct, than a county treasurer. All the presumptions are, that these officers will discharge their duties. Perhaps, if a county board willfully refused to designate an official paper, the county treasurer would be justified in publishing the tax lists in any county paper which he should select. Such, however, is not this case. The statute really contemplates only one official paper in each county. Unnecessary trouble will arise as to the proof of publication of tax lists and other official notices, if two or more papers are designated. A publication in one paper is sufficient, and while the board might wisely require the publication in that paper which has the largest circulation, as publicity is of paramount importance, the selection of more than one paper is inconsistent with the spirit of the statute. The record shows that the county board attempted to designate two. If the county treasurer had selected one of these, either the *Courier* or the *Republican*, it might have been considered the official paper for the publication of the tax lists. As the *Tribune* was not designated by the board, the treasurer had no legal right to make any contract with the publishers of that paper to bind the county; and therefore, the plaintiffs are not entitled to recover in this action.

As a final argument against the right of the county board to designate the paper for the publication of the tax lists, it is urged that as the compensation that printers are allowed to receive for the publication of those lists is fixed by law, and as such compensation is a lien on the real estate and comes out of the real estate or its owner, the publication of the delinquent tax list is not county printing. This argument is not sound. The compensation, that is the maximum compensation, for all legal publications is fixed by law, (Comp. Laws 1879, ch. 39, § 17,) and therefore, if the establishment of such compensation controlled, the rule would be as applicable for the publications required of clerks, sheriffs and other officers as in the case of the publication of a delinquent

tax list. We have decided, in *Quigley v. Comm'rs of Sumner County*, ante, p. 293, that a county, through the county board, may legally contract for and pay less than the maximum fees fixed by the statute for advertising tax lists. Again, while the fees charged for advertising those lists as a general rule are returned to the county through the various proceedings which result from tax sales, yet the county pays for it in the first instance, and the publisher looks to the county, and not to the land or any collections from the tax sales, for his pay. That the county is to pay for such publications, is clearly shown by the provisions of § 51, ch. 25, Comp. Laws 1879. The section is: "The county clerk, in keeping the accounts of his county with the county treasurer, shall charge the county treasurer as follows: . . . With the amount paid by the county for advertising land and town lots for sale for delinquent taxes." In the case at bar, the plaintiffs treat the fees for the publication of the tax list as a claim solely against the county. They have sued the county, and assert that the trial court erred in refusing to hold the county liable for their account.

Even if such publications are not in the strictest sense county printing, yet, as delinquent tax lists and treasurers' notices are expressly named in § 1, ch. 108, Laws 1872, and as there is no necessary conflict between this section and any of the sections of ch. 34, Laws 1876, the county board has the same power to designate the paper to publish such lists and notices as it has to designate the paper for the publication of county printing. As the county board has the power to contract for the publication of the tax lists at less than the statutory fees, as it must audit the accounts for the publication, as it must order them paid, and as they are to be paid out of the funds of the county long prior to their collection, and as, in some cases, they are never restored to the treasury, it is important that the county board, the financial agent of the county, should have the exclusive control of such expenditures. A part of this control consists in designating the paper in which the lists shall be published. The statutes

upon this subject, construed and enforced together, give this control to county boards, and we would be violating the usual and ordinary rules of legal interpretation to transfer, by judicial construction, this control to county treasurers.

The judgment of the district court will be affirmed.

All the Justices concurring.