No. 35,539

Myrtle Thoman, *Appellee*, v. The Farmers & Bankers Life Insurance Company, *Appellant*.

(130 P. 2d 551)

Opinion filed November 7, 1942.

W. D. Jochems, of Wichita, argued the cause, and J. Wirth Sargent, Emmet A. Blaes and Roetzel Jochems, all of Wichita, were on the briefs for the appellant.

Glenn Porter, Getto McDonald, Dwight S. Wallace, William Tinker and Arthur W. Skaer, all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: Plaintiff brought this action for damages for permanent injuries alleged to have been sustained while she was employed as a clerk and stenographer in defendant's air-conditioned office building in Wichita.

Plaintiff alleged that for several months during 1939 and 1940 she was compelled to work in an office room where the temperature was so low that she had to wear woolen clothes and jackets; that she repeatedly complained about the cold to defendant's officials and those in charge of the office where she worked; that her desk was so placed that she was subjected to a draft of cold air which eventually caused her to be afflicted with arthritis which affected her arms, hands, limbs, feet, neck, shoulders and back, and necessitated her going to a hospital where she was confined for 25 days and incurred large expenses for hospital and medical care; that her arthritic condition was permanent, and that she is and will continue to be permanently disabled from carrying on her occupation or any gainful employment.

Defendant filed a motion to require her petition to be made more definite and certain by stating how low the air conditioning made the temperatures where she worked, and the dates when such alleged low temperatures were maintained, and by stating the names of the officials and persons to whom she complained about the cold, and that she be required to state how cold was the air which she alleged was thrown "past the plaintiff and past the back of the plaintiff" and what there was about the installation and operation of the air conditioning which was detrimental to her health and welfare as she alleged.

This motion was overruled and defendant filed an answer which contained a general denial, and alleged that plaintiff had an operation for the removal of a kidney stone and other ailments which caused her to be off duty on many occasions.

Defendant also specifically denied that the conditions under which plaintiff worked were detrimental to her health and welfare; that the air conditioning of defendant's office building was the best system available and had been installed at a cost of $22,000 shortly before the times mentioned in plaintiff's petition, and that defendant had incurred that expense for the particular purpose of adding to the comfort of its employees and to make the working conditions ideal for them. Defendant also alleged that its place of business was and is a safe and comfortable place in which to work. Other paragraphs of defendant's answer continued thus:

"5. Defendant further denies that the plaintiff was compelled to work under conditions which were detrimental to her health and alleges that the health of the plaintiff was such that it was detrimental for her to work, and that notwithstanding such condition of plaintiff's health the plaintiff without regard for her health continued working and thereby assumed the risk of working in a place which plaintiff alleges was detrimental to her health.

"6. Defendant alleges that the risk, if any, of being injured as complained of by plaintiff in her petition was a risk necessarily incident to her employment with defendant; that plaintiff knew the conditions existing in the office in which she worked, or by the exercise of reasonable care could have known of the conditions which she alleges were present, and to which she was exposed as complained of in her petition (but which alleged conditions plaintiff does not admit), but notwithstanding these facts plaintiff continued to work in said office and thereby assumed the risk, if any, incident to her employment with defendant."

Plaintiff filed a motion to strike out various allegations of the answer. This motion was overruled in part, but sustained as to paragraphs 5 and 6 quoted above. Defendant filed an amended answer to conform to the trial court's ruling, and the issues thus made were tried before a jury which failed to agree and were discharged.

Defendant brings the record here for review of whatever errors may be presently appealable, particularly the order striking out paragraphs 5 and 6 of defendant's answer, overruling defendant's demurrer to the evidence, and overruling its motion for a directed verdict.

To justify the trial court's order striking out paragraphs 5 and 6 of defendant's answer, appellee cites the case of *Caspar v. Lewin*,

82 Kan. 604, 109 Pac. 657, where it was held that the common-law defenses of contributory negligence and assumption of risk are not available in an action between employee and employer for damages for breach of a statutory duty. Appellee takes the position that her action is founded exclusively on section 2 of chapter 275 of the Session Laws of 1915, entitled "An act to establish an industrial welfare commission for women, learners and apprentices, and minors, prescribing its powers and duties and providing for the fixing of wages, hours, and the standard conditions of labor for such workers: providing penalties for violations of the same." This statute was expressly and impliedly amended in material respects by chapter 263 of the Session Laws of 1921, as both now appear in G. S. 1935, 44-639 to 44-650, inclusive. The official title of the state board originally charged with the administration of the act, after repeated changes, is now designated "The State Labor Department," whose chief officer is the state labor commissioner. (G. S. 1935, 44-601a, G. S. 1941 Supp. 75-3401 et seq.)

Section 2 of the act (G. S. 1935, 44-640) reads:

"That it shall be unlawful to employ women, learners, and apprentices and minors in any industry or occupation within the state of Kansas under conditions of labor detrimental to their health or welfare and it shall be unlawful to employ women, learners, and apprentices and minors in any industry within the state of Kansas at wages which are not adequate for their maintenance and for more hours in any one day than is consonant with their health and welfare, except as hereinafter provided."

Appellant contends that the statute as amended must be read and construed as a whole, and that one section cannot be isolated from its context and an action maintained thereon. Appellee persuaded the trial court to take a contrary view, which was the basis of its order striking out paragraphs 5 and 6 of the answer.

We regard it as fundamental that in the absence of express statutory language to the contrary a statute is to be construed as a whole, and one section cannot be excised from its context and a right or liability predicated thereon, while the remainder of the statute is ignored. In *Wenger v. Taylor*, 39 Kan. 754, 18 Pac. 911, it was said:

"The general rule in the construction of a statute is, that force and effect must be given to all sections of a statute, if the same can be done without destroying the effect, intent and object with which it was enacted; and all sections of the same act must be construed in harmony with each other, so that no part shall be held as superfluous." (Syl. ¶ 1.)

This rule of statutory construction even goes much further. As

stated by ·Chief Justice Horton in *Wren & Clawson v. Comm'rs of Nemaha Co.*, 24 Kan. 301, 305—

"All statutes *in pari materia* are to be read and construed together, as if they formed parts of the same statute, and were enacted at the same time."

In *Morrill County v. Bliss*, 125 Neb. 97, 249 N. W. 98, 89 A. L. R. 932, it was said:

"Statutes relating to the same subject, although enacted at different times, are *in pari materia* and· should be construed together. (Citation.) 2 Lewis' Sutherland, Statutory Construction, 844, gives the rule: 'Statutes which are not inconsistent with one another, and which relate to the same subject matter, are *in pari materia,* and should be construed together; and effect should be given to them all, although they contain no reference to one another, and were passed at different times. Acts *in pari materia* should be construed together and so as to harmonize and give effect to their various provisions.' (Citations.) A statute will not be construed as repealing by implication an earlier statute, unless there is a plain and unavoidable repugnance. In *State v. Omaha Elevator Co.,* 75 Neb. 637 [106 N. W. 979, 110 N. W. 874], we held: 'All statutes upon the same general subject are to be regarded as part of one system, and later statutes are to be considered as supplementary or complementary to those preceding them on the same subject." (p. 103.)

See, also, *Clark v. Murray*, 141 Kan. 533, 537, 41 P. 2d 1042; 59 C. J. 1042 *et seq.*; 25 R. C. L. 1060 *et seq.*, and 8 R. C. L. Perm. Supp. "Statutes," sec. 285.

Reading the pertinent statute as a whole, G. S. 1935, 44-639 *et seq.*, it will be seen that, as expressed in its title, it is an act to establish a state board charged with the duty of concerning itself with the welfare of women, minors and others, prescribing its powers and duties, authorizing it to fix wages, hours and working conditions, and providing penalties for violations of the board's regulations as to wages, hours, and standard conditions. The purpose of the amendatory statute of 1921 (ch. 263) likewise relates to the powers and duties of the state board, and its text amends and supplements the legislative purposes prescribed in the original act of 1915.

It should be noted that while section 2 of the act (G. S. 1935, 44-640) declares it to be unlawful to employ women (and certain others) in industry or occupation under conditions detrimental to their health and welfare, that section prescribes no standard of conditions to which an employer must conform. Indeed no standard is prescribed in any part of the act itself but is to be prescribed by the official board which it is the declared purpose of the act to create. Section 3 as amended (G. S. 1935, 44-643) provides:

"That the . . . [commission of labor and industry] . . . may es-

tablish such standard of wages, hours, and conditions of labor for women, learners and apprentices, and minors employed within this state as shall be held hereunder to be reasonable and not detrimental to health and welfare: *Provided, however,* The court may establish different minimum hours and standards for each class in an occupation of different localities in the state, when, in the judgment of [the commission] the different conditions obtaining justify such action."

Section 8 as amended (G. S. 1935, 44-645) provides:

"That if after investigation . . . [commission of labor and industry] . . . is of the opinion that in any occupation the wages, hours and conditions, sanitary and otherwise, are prejudicial to the health or welfare of any substantial number of the classes of employees named in this act and are inadequate to supply the necessary cost of living and to maintain the worker in health it shall publish a notice, not less than once a week for four successive weeks in the official state paper, that it will on a date and at a place named in said notice, hold a public meeting at which all persons will be given a hearing; and, after said publication of said notice and said meeting the [commission of labor and industry] may, in its discretion, make and render such an order as may be proper or necessary, and require all employers in the occupation affected thereby to observe and comply with such determinations and said order. Said order shall become effective in sixty days after it is made and rendered and shall be in full force and effect on and after the 60th day following its making and rendition. The [commission of labor and industry] shall, insofar as it is practicable, mail a copy of any such order to every employer affected thereby; and every employer affected by any such order shall keep a copy thereof posted in a conspicuous place in each room of his establishment. That whenever wages, hours, or conditions of labor have been made mandatory in any occupation, upon petition of either employers or employees, the [commission of labor and industry] may at its discretion reopen the question."

It is neither alleged nor argued that the state board (however named) has set up any standard of conditions as authorized by amended sections 3 and 8 of the act (G. S. 1935, 44-643, 44-645) for the employer of women in an office building to conform to—which makes the instant case very different from *Caspar v. Lewin,* supra, so strongly relied on by the appellee. In the factory act the breach of which, with the consequent death of plaintiff's husband, was the basis of the action in *Caspar v. Lewin,* the statute itself prescribed the required standard for the protection of employees—(safeguards for machinery and appliances)—to which all employers in the specified industries were required to install and maintain. So, too, in *Ricci v. Mining Co.,* 92 Kan. 349, 140 Pac. 884, plaintiff's action was for damages for injuries sustained when a rock fell upon him from the roof of a coal mine in which he was working. It was shown that defendant had not supplied a sufficient number of props to support

the roof. The pertinent statute provided that "Every mine shall be supplied with sufficient prop timber of suitable length and size for the places where it is to be used, and kept in easy access to." There again the statute itself supplied the standard by which the employer's duty was to be gauged; and in such cases, where the employer violates the expressly prescribed standards of a pertinent statute, the common-law defenses of contributory negligence and assumption of risk are not available. Such is the general doctrine of the modern textbooks. Thus in Prosser on Torts, 392, it is said:

"There are certain statutes, however, which clearly are intended to protect the plaintiff against his inability to protect himself. Such are the child labor acts, and various safety statutes for the benefit of employees, as to which the court have recognized, in this respect at least, the economic inequality in bargaining power which has induced the passage of the legislation. Since the fundamental purpose of such statutes would be defeated if the plaintiff were permitted to assume the risk, it is generally held that he cannot do so, either expressly or by implication."

Again, in the same textbook, at pages 401-402, it is said:

"The effect of contributory negligence upon the liability of a defendant who has violated a statutory duty is primarily a matter of the legislative purpose which the court finds in the statute. . . . But there are certain types of statutes, such as the child labor acts, which are construed as intended to protect particular classes of persons against their own recognized inability to protect themselves. In such a case, as in the case of the statutes involving the age of consent, the object of the statute itself would be defeated if the plaintiff's fault were a defense, and the courts quite generally refused to recognize it."

In the instant case, however, the statute prescribed no standard of conditions for the employer to obey. So far as shown by this record the state board created by the act with which we are presently concerned has not yet prescribed any standards to which the employer must conform. And until such standards are prescribed defendant cannot be deprived of the defenses of contributory negligence and assumption of risk when he is subjected to an action for damages for his failure to furnish his employee with a place to work which is not detrimental to her health and welfare.

If further argument were needed to support the conclusion just reached, it is deducible from a consideration of G. S. 1935, 44-649, which expressly gives the wage worker (woman, minor, learner or apprentice) a cause of action against the employer who has not paid the minimum wage fixed by the state board. Such action would permit a recovery of the difference between the wage paid and that fixed by the board; but even that action would not be maintainable until

the state board had prescribed a minimum wage. *A fortiori* no statutory action is maintainable in the instant case for the reasons already stated.

The conclusion just reached will necessitate a reversal of the judgment and the question intrudes what disposition should be made of the lawsuit. Obviously it is unnecessary to consider the other errors presented for our review. Since plaintiff based her action exclusively on section 2 of the industrial welfare act (G. S. 1935, 44-640), and made it clear that she was not prosecuting a common-law action against her employer for its negligence in failing to furnish her a safe place to work, what is there left in this case to try? It was on her insistence that she did not seek a recovery of damages at common law that she induced the trial court to strike out of defendant's answer its pleaded defenses of contributory negligence and assumption of risk. It seems clear that final judgment must be ordered and the cause will be remanded with instructions to that effect.

Reversed with directions to render judgment for defendant.