Zimmerman, J.
Relator makes two principal contentions:
1. Under the provisions of Section 2701.03, Revised Code, where an affidavit of prejudice is filed against a judge of the Court of Common Pleas by a party or his counsel in a matter or cause pending before the court, such judge is automatically removed and it becomes the immediate duty of the Chief Justice of the Supreme Court to designate and assign another judge to try such matter or cause.
*465 2. If the above contention is rejected, the respondent Chief Justice, on the evidence introduced at the hearing on the affidavit of prejudice, is chargeable with an abuse of discretion in declining to unseat Judge Earhart.
As to the first contention, Section 3, Article IV of the Constitution of Ohio, as amended September 3, 1912, provides in part:
“Any judge of the Court of Common Pleas may temporarily preside and hold court in any county; and until the General Assembly shall make adequate provision therefor, the Chief Justice of the Supreme Court of the state shall pass upon the disqualification or disability of any judge of the Court of Common Pleas, and he may assign any judge to any county to hold court therein.”
Section 141.08, Revised Code (originally enacted in 1917 as Section 2253-1, General Code, 107 Ohio Laws, 628), recites:
“The Chief Justice of the Supreme Court shall receive his actual and necessary expenses incurred while performing his duties under the law and the Constitution in determining the disqualification or disability of any judge of the Court of Common Pleas or of the Court of Appeals * * *.”
And Section 2701.03, Revised Code (enacted in 1913 [Sec- . tion 1687, General Code] in practically its present wording, 103 Ohio Laws, 417), reads:
“When a judge of the Court of Common Pleas is interested in a cause or matter pending before the court, is related to, or has a bias or prejudice either for or against, a party to such matter or cause or to his counsel, or is otherwise disqualified to sit in such cause or matter, on the filing of an affidavit, by any party to such cause or matter, or by the counsel of any party, setting forth the fact of such interest, bias, prejudice, or disqualification, the Clerk of the Court of Common Pleas shall enter the fact of such filing on the trial docket in such cause and forthwith notify the Chief Justice of the Supreme Court. The Chief Justice shall designate and assign some other judge to take the place of the judge against whom such affidavit is filed. The judge so assigned shall try such matter or cause. Such affidavit shall be filed not less than three days prior to the time set for the hearing in such matter or cause.”
*466 In 1922, this court had before it in the case of State, ex rel. Chute, v. Marshall, Chief Justice, 105 Ohio St., 320, 137 N. E., 870, the exact problem which is now before the court and held in a per curiam opinion that Section 2253-1, General Code (Section 141.08, Revised Code), and Section 1687, General Code (Section 2701.03, Revised Code), are in pari materia and should be construed together, and that when this is done, particularly with reference to Section 3, Article IV of the Constitution of Ohio, it is manifest that the question of bias or prejudice on the part of a judge of the Court of Common Pleas is to be heard and passed on by the Chief Justice of the Supreme Court.
In our view, a good deal may be said in support of the Chute case. Section 3, Article IV of the Constitution, says expressly that, “until the General Assembly shall make adequate provision therefor, the Chief Justice of the Supreme Court of the state shall pass upon the disqualification or disability of any judge of the Court of Common Pleas.”
In Ohio and elsewhere the generally accepted rule is that statutes relating to the same matter or subject, although passed at different times and making no reference to each other, are m pari materia and should be read together to ascertain and effectuate if possible the legislative intent. 37 Ohio Jurisprudence, 599, Section 332; Thoman v. Farmers & Bankers Life Ins. Co., 155 Kan., 806, 130 P. (2d), 551; State, ex rel. Carlton, v. Weed, 208 Minn., 342, 294 N. W., 370.
What is now Section 2701.03, Revised Code, relating to the filing of an affidavit of bias or prejudice against a judge of the Court of Common Pleas and the procedure thereon, was enacted in 1913 in substantially its present language. That by such enactment the General Assembly was not attempting to relieve the Chief Justice of the Supreme Court of his constitutional duty to determine the disqualification of a judge of the Court of Common Pleas against whom an affidavit of bias or prejudice has been filed is disclosed by reference to what is now Section 141.08, Revised Code, representing legislation originally passed in 1917, wherein provision is made for paying the Chief Justice the expenses he may incur “while performing his duties under the law and the Constitution in determining the disqualification or disability of any judge of the Court of Common Pleas.”
*467 Besides, Section 2701.03, Revised Code, read as a whole, appears to create a factual situation as to whether the challenged judge actually has a bias or prejudice for or against a party or his counsel, which would thus require a hearing and determination by a qualified judicial officer, namely the Chief Justice of the Supreme Court, as specified in Section 3, Article IV of the Constitution. That Code section begins with the words, “when a judge * * * has a bias or prejudice either for or against,” and the affidavit required by such section must set “forth the fact of such * * * bias, prejudice, or disqualification.”
For over 40 years the Chief Justice of the Supreme Court has been exercising the prerogative of hearing and deciding affidavits of bias or prejudice filed against judges of the Court of Common Pleas, and his right and obligation to do so have been recognized generally by the bench and bar of this state.
An interesting case bearing on the question now under discussion is that of Duncan, Judge, v. State, ex rel. Brown, 82 Ohio St., 351, 92 N. E., 481, decided in 1910, wherein Sections 469 and 550, Revised Statutes, the latter section being a forerunner of present Section 2701.03, Revised Code, were interpreted. There, as here, it was contended that the mere filing of an affidavit of bias or prejudice against a trial judge automatically removes him from the bench. However, this court said, “no,” holding that the two statutes should be read together, the result of which is to impose on the “supervising” judge the duty to hear the affidavit and to determine whether the actual fact of interest, relationship, bias or prejudice or other disqualification, with respect to the challenged judge, is present and also whether there is satisfactory information to that effect. “That is, the information which authorizes the supervising judge to designate another judge, must be of such a nature as to satisfy him that the disqualification really exists and is not a subterfuge. The affidavit is, at best, no more than prima facie evidence of the fact.”
At the close of the opinion in the Duncan case, the following significant language appears:
“We adopt this construction of the statute the more readily, because, if the affidavit be taken as final and conclusive, it would *468 raise a more Serious question as to whether the Legislature has overstepped constitutional limits, and it can not be lightly assumed that it intended to do so.” Compare Diehl v. Crump, Judge, 72 Okla., 108, 179 P., 4, 5 A. L. R., 1272, and U’Ren v. Bagley, Judge, 18 Ore., 77, 245 P., 1074, 46 A. L. R., 1173.
We can not see that the cases of Wolf v. Marshall, 120 Ohio St., 216, 165 N. E., 848; State, ex rel. Turner, v. Marshall, Chief Justice, 123 Ohio St., 586, 176 N. E., 454; and State, ex rel. Grogan, v. Wanamaker, Judge, 139 Ohio St., 293, 39 N. E. (2d), 853, have any particular bearing on the feature of this case presently under examination.
The Wolf case holds merely that the provision of Section 1687, General Code, requiring the filing of an affidavit of prejudice three days before the time of trial does not apply where it is impossible to identify the judge before whom the case is to be heard until less than three days prior to trial, and that, where such an affidavit is filed at the earliest moment possible before trial, the judge must recognize it, and it is prejudicial error for him to proceed with the trial in face of the pending affidavit.
In the Turner case it was held that the facts presented to the Chief Justice to sustain the affidavits of prejudice were patently such as to disqualify the challenged judge from hearing the causes, and that the Chief Justice should have so determined and removed the judge.
The Grogan case had to do with Section 12000, General Code, since repealed, a statute confined strictly to venue. In the opinion in that case, the Chute case is cited, and it is pointed out that such case dealt with an entirely different subject.
Judge Turner, writing the opinion in the Grogan case, said:
“Sections 1687 and 2253-1, General Code, are quickly disposed of here. The former facilitates disqualification proceedings, while the latter allows the Chief Justice of this court to collect his necessary expenses incurred in discharging his duties in determining the disqualification or disability of any judge. Those sections have no application to proceedings under Section 12000, General Code, which is purely a venue statute. Cases like Duncan, Judge, v. State, ex rel. Brown, 82 Ohio St., 351, 92 N. E., 481, which was based upon Sections 550 and *469 469, Revised Statutes, and State, ex rel. Chute, v. Marshall,. Chief Justice, 105 Ohio St., 320, 137 N. E., 870, which was based upon Section 1687 and 2253-1, General Code, were concerned with the disqualification of a judge and not with the question of venue. Sections 1687 and 2253-1, together with the provisions of Section 3, Article IV, became the successors of Sections 550 and 469 and related sections of the Revised Statutes, which were concerned with the disqualification of a judge and not with the question of venue.”
The Chute case has stood as the law of Ohio for more than 33 years and is decisive of the precise question with which we are now confronted. During that span of years, the General Assembly has made no attempt to enact further legislation which might affect the situation. Therefore, a majority of the members of this court adhere to the Chute case, and relator’s first contention is decided against him.
Moreover, it is doubtful in our minds whether the orderly and efficient administration of justice would be served by the automatic disqualification and removal of a judge upon the mere filing of an affidavit of prejudice, which affidavit might in fact be groundless.
With regard to relator’s second contention, the term, “biased or prejudiced,” when used in reference to a judge before whom a cause is pending, implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contra-distinguished from an open state of mind which will be governed by the law and the facts.
At the hearing before the respondent on the. affidavit of prejudice, J. Earl Pratt, attorney for relator in the divorce action, A. W. Hanshaw and relator testified in support of the affidavit, and Judge Earhart testified in opposition to it.
The gist of the testimony introduced by the relator is that before Judge Earhart assumed his judicial office he was a member of the law firm which represents Mrs. Pratt in the divorce action against relator; that such firm also represents banking institutions which might be drawn into the litigation involving relator and his wife; that one of the members of this law firm *470 has a financial interest in such banking institutions; that Judge Earhart had suggested the appropriateness of releasing an attachment on certificates of stock owned by relator’s wife in a telephone company of which relator is president; that J. Earl Pratt and his brother, Pearl A. Pratt, were supporting the candidate opposing Judge Earhart for election to the Court of Common Pleas of Lawrence County in 1954; that Judge Earhart declined to approve the appointment of A. W. Hanshaw as a deputy sheriff of Lawrence County because he “was too close to Earl Pratt” who had been instrumental in “getting his [Judge Earhart’s] opponent in the race for judge”; that J! Earl Pratt requested Judge Earhart not to hear the Pratt divorce case because he and relator considered the judge prejudiced against them, to which request the judge did not accede; and that, after the first hearing on the affidavit of prejudice and before the second and final hearing, Judge Earhart advised individuals in the city of Ironton, including newspaper men, that J. Earl Pratt had testified in the first hearing that he, Pratt, controlled factions of both the Eepublican and Democratic Parties in Lawrence County, which resulted in a newspaper story on the subject in the Ironton Tribune.
Both J. Earl Pratt and relator stated that in their opinion the relator would not be accorded a fair trial in the divorce action if it was heard by Judge Earhart.
Judge Earhart, in his own behalf, testified to the effect that he had no partiality toward the law firm of which he was formerly a member; that there were reasons other than political ones ■ for his refusal to approve the appointment of Hanshaw as a deputy sheriff; and that he so informed Hanshaw. He also testified that he entertained no antagonism or ill will toward either relator or J. Earl Pratt; that he had an open mind with respect to the divorce case; and that he knew of no valid reason why he could not hear and determine the matter fairly and impartially.
The judges of this court are not faced with the problem of how they, occupying the place of respondent in the hearing of the affidavit of prejudice, might have decided the issue, but with the problem of whether the respondent plainly committed au abuse of discretion in refusing to unbench Judge Earhart.
*471 Since judicial discretion in a situation of this kind is abused, where it is exercised to an end or purpose wholly unjustified by and clearly against reason and evidence, the majority of the members of this court are of the opinion that the charge made against respondent in this respect has not been sustained.
However, in concluding, we think it not inappropriate to quote the following language from the opinion in the case of Haslam v. Morrison, Judge, 113 Utah, 14, 20, 190 P. (2d), 520, 523:
“The purity and integrity of the judicial process ought to be protected against any taint of suspicion to the end that the public and litigants may have the highest confidence in the integrity and fairness of the courts. This is not to say that the mere filing of an affidavit of bias and prejudice, ipso facto casts such suspicion on the .judge, and upon his integrity and fairness, that he ought to disqualify himself. However, it is ordinarily better for a judge to disqualify himself even though he may be entirely free of bias and prejudice if either litigant files an affidavit of bias and prejudice.
“ ‘Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge. ’ ”
The writ of mandamus is denied.

Writ denied.

Matthias, Hart and Belt, JJ., concur.
Stewart and Tart, JJ., dissent.
Weygandt, C. J., not participating.