No. 52,231

STANLEY TAYLOR d/b/a CROP CLINIC, *Appellee*, v. THE DEPARTMENT OF HEALTH AND ENVIRONMENT, *Appellant.*

(634 P.2d 1075)

Opinion filed October 23, 1981.

*Robert T. Stephan,* attorney general, and *Janet A. Chubb,* assistant attorney general, were on the brief for the appellant.

No appearance by appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal by the State in a water pollution action brought under K.S.A. 1975 Supp. 65-161 *et seq.* The statute provides for appeal to the district court from administrative orders and for appeal to the Supreme Court from the final decision of the district court. K.S.A. 1975 Supp. 65-170d(*d*). The appellee did not file a brief or appear to argue the appeal.

The facts giving rise to the appeal in this case are not in controversy. Appellee Stanley Taylor, operator of an aerial spraying service known as Crop Clinic of Tulia, Texas, sprayed 98.4 acres of wheat on Rex McDanial's farm north of Argonia, Kansas, on February 25, 1976. Two days later, an employee of the Sumner County Health Department received a report of a fish kill on Sandy Creek north of Argonia; he investigated and found dead and dying fish in an area of Sandy Creek near the east boundary of the McDanial wheat field. Subsequent laboratory analysis of fish and water samples from the kill area revealed lethal concentrations of endrin, a chemical Taylor had used in spraying the wheat field. Appellant's brief, however, also refers to sediment samples collected one month after the kill which, on analysis, revealed higher concentrations of endrin *upstream* than in the kill area. We only note this inconsistency in passing since our disposition of the case makes a factual determination unnecessary at this point.

On March 31, 1976, the Department of Health and Environment issued an order assessing a civil penalty of $3,500 pursuant to K.S.A. 1975 Supp. 65-170d against Stanley Taylor, d/b/a Crop Clinic for improper application of pesticides which caused water pollution in violation of K.S.A. 1975 Supp. 65-164 *et seq.,* and regulations K.A.R. 28-16-27 and 28. After exhausting his administrative remedies, Taylor appealed to the district court, which held the Department had no jurisdiction over Taylor and set the order aside. The district court concluded the original action should have been brought under K.S.A. 1975 Supp. 65-171d. The State appeals from this decision of the district court.

The statutes governing the regulation of water pollution in this state first appeared in primitive form in 1907 and have been repeatedly amended and expanded as environmental concerns have intensified. These amendments have been enacted in a haphazard fashion which has resulted in an overlapping and confusing regulatory scheme. In construing the statutes, however, we are required to read and construe them together so as to harmonize them and give effect to their various provisions, if that can be done without destroying the effect, intent and purpose for which they were enacted. *Thoman v. Farmers & Bankers Life Ins. Co.,* 155 Kan. 806, 809, 130 P.2d 551 (1942).

This court, after careful consideration of the case at bar as well as a comprehensive review of Kansas pollution statutes, has concluded the district court reached the correct result but for the wrong reason. Analysis of the statutes pertaining to water supply and sewage, K.S.A. 1975 Supp. 65-161 *et seq.,* reveals no legislative intent to include stream pollution and damage to aquatic life caused by the drift from aerial application of pesticides. K.S.A. 1975 Supp. 65-164 is a key provision in determining legislative intent. It provides in part:

"That no person, company, corporation, institution or municipality shall place or permit to be placed or discharge or permit to flow into any of the waters of the state any sewage, except as hereinafter provided. But this act shall not prevent the discharge of sewage from any public sewer system owned and maintained by a municipality or sewerage company, provided such sewer system was in operation and was discharging sewage into the waters of the state on the twentieth day of March, 1907; but this exception shall not permit the discharge of sewage from any sewer system that shall have been extended subsequent to the aforesaid date, nor shall it permit the discharge of any sewage which, upon investigation by the secretary of health and environment, as hereinafter provided, shall be found to be

polluting the waters of the state in a manner prejudicial to the health of the inhabitants thereof.

"For the purposes of this act, sewage is hereby defined as any substance that contains any of the waste products or excrementitious or other discharges from the bodies of human beings or animals, or chemical or other wastes from domestic, manufacturing or other forms of industry."

The act is directed to the discharge of sewage into the waters of the state and defines sewage in terms of *waste* products, refuse or superfluous materials. The drift from aerial chemical spraying is not a waste product. Careless application results in a useful product coming to rest in an area where it causes damage. Furthermore, the act is directed to pollution "prejudicial to the health of the inhabitants" of the state. We construe the term "inhabitants" as used in this section to refer to persons rather than animal or aquatic life.

Protection for animal or aquatic life is provided in K.S.A. 1975 Supp. 65-171a:

"The authority of the secretary of health and environment in matters of stream pollution is hereby *supplemented* to include stream pollution found to be detrimental to public health or detrimental to the animal or aquatic life of the state." (Emphasis added.)

Section 171a and those sections following complete the regulatory scheme on discharge of waste into streams or underground waters by adding animal or aquatic life to the species protected. These sections expand the protection from pollutants in the form of waste products rather than changing or broadening the act to include pollution from pesticide use.

K.S.A. 1975 Supp. 65-171d provides the secretary of health and environment shall make rules and regulations:

"For the purpose of preventing surface and subsurface water pollution and soil pollution detrimental to public health or to the plant, animal and aquatic life of the state, and to protect beneficial uses of the waters of the state and to require the treatment of sewage predicated upon technologically based effluent limitations . . . ."

This section is again directed to the discharge of waste materials and gives the secretary rulemaking authority to prevent that type of pollution.

K.S.A. 1975 Supp. 65-170d($a$)(2) provides a civil penalty for any person who violates "any effluent standard or limitation or any water quality standard or other rule or regulation promulgated pursuant to K.S.A. 65-171d." By definition, the civil penalty is limited to the subject matter of 65-171d. The statutes discussed

above are individually and collectively concerned with the discharge or dumping of pollutants into water as waste materials.

This comprehensive regulation of the discharge of waste products complements the Kansas Pesticide Use Law found at K.S.A. 2-2413 *et seq.* (Weeks 1975, repealed L. 1976, ch. 1, § 32) (now the Kansas Pesticide Law, K.S.A. 1980 Supp. 2-2438a *et seq.*). K.S.A. 2-2415, the declaration of purpose, specifically addresses the situation at bar.

"The purpose of this act is to regulate in the public interest, the use, manufacture, transportation and application of insecticides, fungicides, herbicides, defoliants, desiccants, plant growth regulators, nematocides, rodenticides, and any other pesticide. New pesticides are continually being discovered or synthesized which are valuable for the control of insects, fungi, weeds, nematodes, rodents, and for use as defoliants, desiccants, plant regulators and related purposes. If not properly used, pesticides may injure man, wildlife or other animals, either by direct poisoning or by gradual accumulation of poisons in the tissues. Crops or other plants may also be injured by their improper use. *The drifting or washing of pesticides into streams or lakes can cause appreciable damage to aquatic life.* A pesticide applied for the purpose of killing pests in a crop, which is not itself injured by the pesticide, may drift and injure other crops or nontarget organisms with which it comes in contact." (Emphasis added.)

The trial court found the Secretary of the Department of Health and Environment had no jurisdiction over the appellee because the action should have been brought under K.S.A. 1975 Supp. 65-171d. We find the Secretary of the Department of Health and Environment had no authority to assess a civil or criminal penalty in this case. Defendant should have been charged pursuant to K.S.A. 2-2413 *et seq.*, which is administered by the Secretary of the State Board of Agriculture. This court has often held, however, that if the judgment of the trial court is correct, it is to be upheld even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision. *Farmers State Bank v. Cooper,* 227 Kan. 547, 556, 608 P.2d 929 (1980); *Chelsea Plaza Homes, Inc. v. Moore,* 226 Kan. 430, 435, 601 P.2d 1100 (1979); *National Equip. Rental, Ltd. v. Taylor,* 225 Kan. 58, 62, 587 P.2d 870 (1978); *Belger Cartage Serv., Inc. v. Holland Constr. Co.,* 224 Kan. 320, 334, 582 P.2d 1111 (1978).

The judgment of the trial court is affirmed.

HOLMES, J., not participating.