**STATE v. MAURITZ–WELLS CO. et al.**

No. 11515.

Court of Civil Appeals of Texas. Galveston.

April 8, 1943.

Rehearing Denied April 22, 1943.

Gerald C. Mann, Atty. Gen., and L. P. Lollar, Asst. Atty. Gen., for appellant.

Andrews, Kelley, Kurth & Campbell, of Houston (Homer Mabry, of Houston, of counsel), for Harvey Lumber & Supply Co.

Baker, Botts, Andrews & Wharton, of Houston (L. G. Zinnecker, of Houston, of counsel), for Travelers Ins. Co.

Cullen B. Vance, of Edna, for Union City Transfer and others.

CODY, Justice.

The Mauritz-Wells Company sued the Tyler Construction Company to recover a debt of approximately $1,200. In connection with said action in debt, the Mauritz-Wells Company sued out a writ of garnishment against the Humble Oil & Refining Company, hereafter referred to as the Humble. Then, in the writ of garnishment suit, the Humble answered that it owed the Tyler Construction Company $14,887.06. However, in connection with the said answer in the writ of garnishment suit, the Humble filed a bill of interpleader naming numerous parties, each of whom it alleged claimed that the Tyler Construction Company owed it money payable out of the aforesaid sum of $14,887.06, and in its said bill of interpleader the Humble prayed that the defendants to its interpleader suit be required to interplead and have their rights, if any, to participate in the aforesaid sum of $14,887.-06 determined so that the Humble might avoid the risk of double liability in connection therewith. In its said interpleader suit, the Humble was adjudged to be a stakeholder with respect to the aforesaid sum of $14,887.06, and among the parties defendant in said stakeholder's or bill of interpleader suit was the State of Texas. In its answer to the Humble's stakeholder's suit, the State alleged that the Tyler Consruction Company was indebted to it on account of contributions under the Texas Unemployment Compensation Act in approximately $1,300; and the State claimed the right to have its said claim paid in full out of the aforesaid sum of $14,887.06 before said fund was applied to the payment of the unsecured creditors of the Tyler Construction Company. The court below, however, declined to hold the State's aforesaid claim was entitled to priority payment out of the aforesaid fund in preference to the claims of unsecured creditors and only permitted the State to share pro rata in the aforesaid fund with the other unsecured creditors of the Tyler Construction Company. The State alone has appealed.

So far as we are advised, this is a case of first impression. The contributions provided for in the Texas Unemployment Compensation Act, Vernon's Ann.Civ.St. art. 5221b—1 et seq., are taxes, other than ad valorem taxes. Friedman v. American Surety Co., 137 Tex. 149, 151 S.W.2d 570. But the mere fact that an indebtedness which is due the State is a tax does not of itself entitle the State to have same fully paid in preference to the payment of the claims of all other creditors of the tax-debtor. It is too well known to require citation of authority that an ad valorem tax due against a particular piece of property is secured only by paramount lien upon said property, but that, if said property prove inadequate to satisfy such ad valorem tax, the State has no priority right to satisfy the deficit out of the tax debtor's other property in preference to such tax debtor's general and unsecured creditors. Indeed, in this case the State bases its claim of right to priority payment out of the debt owed by the Humble to the Tyler Construction Company only upon two statutes, the first of which is Subsection (i), Article 5221b—12, Vernon's Ann.Civ.St., which reads: "Priorities under legal dissolutions or distributions: In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this State, including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition, or similar proceedings, contributions then or thereafter due shall be entitled to the same priority as is now accorded by the General Laws of the State of Texas to other tax claims."

It will be noted that the foregoing statute does not, upon its face, purport to apply to a stakeholder's suit. On the contrary, it purports to apply to proceedings which contemplate the winding up of affairs of a business, whether corporate or unincorporated. The "distributions" instanced in the foregoing statute are only such as

are ordered in (1) receiverships, (2) assignments for benefit of creditors, (3) adjudicated insolvency, (4) composition, and (5) similar proceedings. A stakeholder's suit is not ejusdem generis with, does not belong to the same general class as, the proceedings enumerated in the foregoing statute. A stakeholder's suit differs from the proceedings mentioned in the statute in that it is brought primarily for the benefit of an innocent stakeholder who, through no fault of his own, will be subjected to double liability unless the rival claimants to the particular property or a particular fund in his hands are required to present their rival claims in a single proceeding. Likewise, the judgment rendered in a stakeholder's suit, determining the relative merits of the rival claims to participate in the fund in the hands of the stakeholder, is not so much an order distributing such fund as it is an action protecting the stakeholder against the risk of double liability. Of course, as a mere incident to protecting the stakeholder against double liability, the fund is ordered distributed as the interest of the parties to said suit is made to appear. However, such considerations as induced the Legislature to provide in the aforesaid statute for the State to be paid "contributions" owed to it, where distributions are ordered in receiverships, assignments for benefit of creditors, etc., would not operate to induce the Legislature to make similar provision in a stakeholder's suit. This is but another way of stating that a stakeholder's suit is not a "similar proceeding" to the proceedings listed in the statute. Besides, it is wholly foreign to the nature and the purpose of a stakeholder's suit to provide that a claim against the stakeholder should arise and be created in consequence of such suit. A stakeholder's suit is for the purpose of determining existing rights and priorities among those made parties defendant, not for the purpose of creating such. To sustain the State's contention that the aforesaid statute creates in it a right in and to the fund in the Humble's hands in preference to the claims thereagainst of the general creditors would be to hold that, though admittedly the State had no right or claim to the fund prior to the institution by the Humble of its stakeholder's suit, yet because the Humble made the State a party to its bill of interpleader, it thereby established in and conferred upon the State a preference right against said fund. The right of general creditors against the property of their debtor cannot be thus subjected to the action of third parties.

■ In this connection we should make it clear that the State refers to the proceeding in which the Humble sought and obtained the bill of interpleader as being a garnishment proceeding. But as stated above, the State was brought into the suit merely as a party defendant to the Humble's bill of interpleader, and it is asserting its claim to the fund in the Humble's possession solely in response to said bill of interpleader. It is clear that the proceeding in connection with which the State is before the court is a stakeholder's suit.

The next statute under which the State claims a priority right to the fund in the Humble's possession is Article 7269, Vernon's Ann.Civ.St.: "In all cases where a taxpayer makes an assignment of his property for the payment of his debts, or where his property is levied upon by creditors, by writs of attachments or otherwise, * * *. Such unpaid taxes shall be paid by the assignee, when said property has been seized by the sheriff, out of the proceeds of sale in case such property has been seized under attachment or other writ * * *."

■ It may be conceded that the Mauritz-Wells Company, in obtaining the writ of garnishment against the Humble, did thereby, in effect, make of the Humble a sort of receiver to hold the aforesaid sum of $14,887.06 to the extent necessary to pay off the debt of $1,200, due to the Mauritz-Wells Company from Tyler Construction Company, together with all costs of such garnishment proceeding. Or, if one so prefers, it can be said with equal justice, that said garnishment proceeding did in effect attach so much of the approximately $15,000 fund as was necessary to pay off the aforesaid $1,200 debt of Mauritz-Wells Company, together with all costs of the proceeding. But we are unable to see how the fact that such garnishment proceeding attaching the $15,000 to the extent necessary to protect Mauritz-Wells Company in the collection of its $1,200 operates under Article 7269, to give the State a priority right against said fund of approximately $15,000 to collect thereout of contributions owed under the Texas Unemployment Compensation Act. It is clear to us that Art. 7269, supra, does not operate to fix liability for the payment of taxes on property for which the property would not otherwise be liable. It merely operates to prevent property

which already stands liable for the payment of specific taxes from ceasing to be liable, merely because it is assigned, attached or levied upon. If, however, the effect were given to the statute which the State seeks to give it, creditors would certainly cease to attach their debtor's property. For there is always the risk, in attaching a debtor's property, that he will sue his creditor for damages. A creditor resorts to the harsh remedy of attachment only because he may otherwise lose his debt. To us it is a novel contention that, by subjecting the debtor's property to an attachment lien, the attaching creditor thereby affixes upon the property attached a paramount lien to secure to the State the payment of his debtor's taxes generally and that only the excess which the attached property will bring after paying off all taxes due by the debtor on all counts and on all such debtor's property can be applied to the attaching creditor's debt.

We think that the trial court correctly ruled that the State was entitled to participate in said fund only as an unsecured creditor of the Tyler Construction Company, and the judgment will be affirmed.

Affirmed.