## Reconstruction Finance Corp. v. Fallston Co.

*John D. Ray,* for plaintiff.

*Joseph K. Stone,* for Commonwealth.

READER, P. J., February 9, 1944.—The above-stated case is before us on exceptions to the report of the auditor appointed by the court to distribute a fund paid into court by the sheriff. Plaintiff entered judgment against defendant in the Court of Common Pleas of Beaver County at no. 193, December term, 1941, d. s. b. The judgment was entered upon a bond in the penal sum of $120,000, securing a real debt of $51,-470.92, with interest from November 1, 1942. An alias writ of fieri facias was issued on this judgment at no. 34, June term, 1943, on March 29, 1943. On April 24, 1943, the sheriff levied upon a quantity of bricks, tile, and other personal property of defendant. On April 30, 1943, the sheriff sold the property levied on to Sam Gilbert for $4,130. There being conflicting claims to the fund in the sheriff's hands, an order was made directing the sheriff to pay the fund into court, less his costs and advertising costs. The fund having been paid into court, the court appointed W. N. Dinsmore, Esq., an auditor to distribute the balance so paid into court. The auditor, after hearings duly had, filed his report on November 16, 1943. Among the claims allowed by the auditor was the claim of Commonwealth of Pennsylvania, Division of Unemployment Compensation, in the sum of $2,223.49. Plaintiff in the writ excepted to the allowance of this claim before the auditor, and the exception was overruled by the auditor. The exception to the allowance of this claim is now before us. The question for determination is whether this claim is entitled

to participate in the proceeds of the sheriff's sale and to priority in distribution.

Prior to the sheriff's sale the sheriff gave notice of the proposed sale to the Department of Revenue, and to the Unemployment Compensation Division. On April 20, 1943, the Department of Revenue filed with the sheriff a claim for certain State taxes due from defendant. This claim seems to be in accordance with The Fiscal Code of April 9, 1929, P. L. 343, and its amendments, 72 PS §1401, etc. This claim was allowed and no exception is taken to its allowance.

In reply to the sheriff's notice he received the following communication from the Supervisor for Beaver County of the Bureau of Employment and Unemployment Compensation:

"COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF LABOR AND INDUSTRY
BUREAU OF EMPLOYMENT AND UNEMPLOYMENT . .
COMPENSATION
DIVISION OF UNEMPLOYMENT COMPENSATION
101 Brighton Avenue,
Rochester, Pennsylvania.
April 27, 1943
PROOF OF CLAIM

| Commonwealth of | Reconstruction Finance Corporation |
|---|---|
| Pennsylvania | vs. |
| | The Fallston Company |
| Beaver County | June Term 1943 #34 |
| | Alias FiFa |

"This certifies that The Fallston Company, a corporation trading in the Borough of New Brighton, Beaver County, Pennsylvania, is indebted to the Bureau of Employment and Unemployment Compensation of the Commonwealth of Pennsylvania, in the amount of two thousand two hundred twenty-three dollars and forty-nine cents ($2,223.49), being contribution and interest due as follows:

| Period |  | Contribution | Interest |
|--------|--|-------------|----------|
| 1941—4th | Qtr. | $ 63.76 | $ 28.67 |
| 1942—1st | " | 556.89 | 72.40 |
| 2nd | " | 306.10 | 30.61 |
| 3rd | " | 451.02 | 31.57 |
| 4th | " | 402.49 | 16.10 |
| 1943—1st | " | 202.46 | 2.02 |
| 2nd | " | 59.40 | |

BUREAU OF EMPLOYMENT AND UNEMPLOYMENT COMPENSATION

FIELD ACCOUNTING SERVICE

(Signed) A. J. Pugar

A. J. Pugar, County Supervisor,

Beaver County"

This is the only evidence before the auditor, or the court, of any claim or lien of the Division of Unemployment Compensation upon the fund in the sheriff's hands as proceeds of the sheriff's sale and now in court. If this claim is a lien on the fund it must get this character and standing from some legislative enactment. The system of unemployment compensation in Pennsylvania is based upon the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, and the amendments and supplements thereto, 43 PS §751, etc. The statutes provide for certain contributions to be made by the employer to the fund to be administered under them in affording to employes unemployment compensation. Provision is made for the collection of such contributions from employers in default. Section 309 of the original act, as last amended by the Act of April 23, 1942, P. L. 60, 43 PS §789, provides for the collection of such contributions by civil action in the name of the Commonwealth. Section 308.1 was added to the original act by the said Act of April 23, 1942, 43 PS §788.1. It reads as follows:

"All contributions and the interest and penalties thereon due and payable by an employer under the

provisions of this act shall be a lien upon the franchises and property, both real and personal, of the employer liable therefor, from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. Whenever the franchises or property of an employer is [sic] sold at a judicial sale, all contributions and the interest and penalties thereon thus entered of record shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that State taxes are paid: Provided, however, That the lien hereby created shall not be prior to pre-existing duly recorded real estate mortgages, subject nevertheless to the order of distribution prescribed in Section 310 hereof. The department may at any time transmit to the prothonotaries of the respective counties of the Commonwealth, to be by them entered of record, certified copies of all liens for unpaid contributions, interest and penalties which may now exist or hereafter arise, upon which record it shall be lawful for writs of scire facias to issue and be prosecuted to judgment and execution in the same manner as such writs are ordinarily employed."

It seems quite clear to us that a lien for such contributions arises under this statute only "from the date a lien for such contributions . . . is entered of record in the manner hereinafter provided". The record so contemplated is evidently that provided for in the same section, namely ,the filing of the claim or lien in the office of the prothonotary. This is the only method provided by the section, or by any other provision of the statute, except section 310 of the original act, as amended, hereinafter referred to. Undoubtedly the contributions for which a lien is claimed in this case never became a lien upon the employer's property, or the fund in court, under the provisions of said section 308.1, 43 PS §788.1, above quoted, because of failure to make the record thereof required by that

section. It is true the auditor finds as a fact that in July 1943 the Unemployment Compensation Division of the Commonwealth of Pennsylvania filed liens in the office of the Prothonotary of Beaver County, at no. 43 and no. 134, September term, 1943, d. s. b., covering said claims in the amount of $2,223.40. This, however, was too late to affect the fund in court. The property represented by the fund was no longer the property of defendant, the employer. The sheriff's sale had passed title to it to the purchaser, the fund was in court for distribution, and an auditor had been appointed to make distribution (May 27, 1943). Plaintiff in the writ was entitled to the notice provided by law of existing liens, at the time of the sheriff's sale, in order that he might intelligently act at the sale. The notice mailed to the sheriff from the Rochester office of the Supervisor for Beaver County of the Bureau of Employment and Unemployment Compensation, above quoted, was a nullity. There was no lien in existence of which it gave notice, and it was not effective in creating a lien. In administering the complicated legal systems we have established much must be left to executive action—but, certainly, we have not reached the point where the existence of liens affecting the property interests of all the citizens of the Commonwealth may be determined by the ipse dixit of a local functionary.

We come to the question whether this claim is entitled to participation and priority in distribution of the fund under the provisions of section 310 of the act, as amended by the Act of April 23, 1942, P. L. 60, 43 PS §790. This section reads:

"In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this Commonwealth, including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition, or similar proceeding, contributions or installments thereof, or interest thereon, then or thereafter due shall be paid in full prior to all other

claims except taxes, claims arising under The Workmen's Compensation Act of one thousand nine hundred fifteen, and its amendments and supplements, and claims for wages of not more than two hundred and fifty dollars to each claimant earned within six months of the commencement of the proceeding. In the event of an employer's adjudication in bankruptcy, judicially confirmed extension, proposal, or composition under the Federal Bankruptcy Act of one thousand eight hundred ninety-eight, as amended, contributions and interest then or thereafter due shall be entitled to such priority as . . . are now or may hereafter be granted to taxes due a state under the said federal bankruptcy act or its amendments."

The auditor concluded that this provision has no application to the present case, and we are of the same opinion. We think it applies to cases in which in some legal proceedings the court has acquired control of all the employer's property, and is making distribution of it. This seems to us to be the necessary implication of the words "any distribution of an employer's assets". The section indicates specifically the nature of the proceeding to which it is intended to apply. The tendency of the courts will, no doubt, be to strictly limit its application to such proceedings. Thus, in the case of Marberger's Estate, 37 D. & C. 328, it was held inapplicable in the distribution of a decedent's estate. We think, however, there is a radical distinction between the distribution now before us and such a distribution as this section of the act contemplates. The distribution of the proceeds of a sheriff's sales is a distribution primarily by the sheriff, subject to a resort to the court, for the determination of disputed questions incident to his distribution. It is not primarily a distribution by the court. Thus, in the present case the court is concerned with only one item of the distribution.

While the auditor cannot find that the disputed claim can be supported under either of the sections of the act

hereinbefore considered, he reaches the conclusion that these sections by reference introduce into their operation the procedure of The Fiscal Code of April 9, 1929, P. L. 343, and its amendments and supplements, 72 PS §1401, etc. There is no such express adoption of the provisions of The Fiscal Code. We find no language in the Unemployment Compensation Law from which such an adoption can be implied. The only language referred to by the auditor as having this effect is found in section 308.1, 43 PS §788.1, above quoted, and reading as follows:

". . . Whenever the franchises or property of an employer is sold at a judicial sale, all contributions and the interest and penalties thereon *thus entered of record* shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that States taxes are paid". (Italics supplied.)

After quoting this language, the auditor says: "This section states plainly that the above section of the Act of 1942 is by implication similar to section 303 of The Fiscal Code, P. S. 72, section 1401."

It is quite apparent, however, that the language quoted is effective only as to contributions "thus entered of record", namely, filed in the office of the prothonotary. The reference to State taxes is only illustrative of the manner in which a contribution in default, so made a matter of record, shall be paid. The auditor relies to some extent upon the decision in the case of Commonwealth v. Perkins, 342 Pa. 529, particularly upon its holding that enforced contributions under the Unemployment Compensation Law are, in reality, taxes. But that case also holds that the contributions made under the statutes do not constitute a State fund, and are not subject to appropriation as are State funds; that they constitute a trust fund to be administered by the Commonwealth in coöperation with the Federal Government; and that the relation of the Com-

monwealth to the fund is that of a trustee, not a sovereign. The decision seems to us to emphasize the fact that the system is anomalous, not an integral part of the fiscal system of the Commonwealth, and that it must depend for its operation and enforcement upon the provisions of the statute creating it, or of legislation specifically designed to make it effective.

Even if we were to conclude that The Fiscal Code could be called in to the aid of the Unemployment Compensation Law, we think it would not avail the claimant in this case. The Fiscal Code, as amended by the Act of May 28, 1943, P. L. 794, 72 PS §1401, provides in part as follows:

"All State taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, and unpaid bonus' . . . , including interest thereupon, penalties, and all public accounts settled against any corporation, association, or person . . . , shall be a first lien upon the franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement and whenever the franchises or property of a corporation, association, or person shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts due the Commonwealth shall first be allowed and paid out of the proceeds of such sale before any judgment, mortgage, or any other claim or lien against such corporation, association, or person. . . ." The history and effect of this legislation have been fully considered in the case of Commonwealth v. Central Realty Co. et al., 338 Pa. 172. It is now established that such taxes, claims, accounts, etc., as are designated in the language of the statute above quoted become liens upon their being settled in the office of the Auditor General, now Department of Revenue. They need not thereafter be certified to the prothonotary of the county, but the lien begins only with such settlement. Until that is effected

there is no lien. There is nothing before us to show such settlement of the claim of the Division of Unemployment Compensation, nothing upon which The Fiscal Code can operate to enforce payment of that claim out of the fund in court. There is nothing in support of the claim but the letter of the county supervisor, hereinbefore quoted, which we are satisfied is a nullity.

### Order

Now, to wit, February 9, 1944, it is hereby ordered, adjudged, and decreed that the exception of plaintiff in the execution to the auditor's report is hereby sustained, that the award by the auditor of the sum of $2,223.49 to Commonwealth of Pennsylvania, Division of Unemployment Compensation, is set aside, and said sum is awarded to plaintiff in the writ, and the sheriff is directed to pay the same to said plaintiff.