No. 53,898

JOHN DEERE COMPANY, A Delaware Corporation, *Appellee*, v. BUTLER COUNTY IMPLEMENT, INC., A Kansas Corporation; UNITED STATES OF AMERICA; FIRST NATIONAL BANK AND TRUST COMPANY; BORG-WARNER ACCEPTANCE CORPORATION, A Delaware Corporation; AUSTIN PRODUCTS, INC., A Texas Corporation; KUBOTA TRACTOR CORPORATION, *Appellees,* and STATE OF KANSAS, DEPARTMENT OF HUMAN RESOURCES; STATE OF KANSAS, DEPARTMENT OF REVENUE, *Appellants.*

(655 P.2d 124)

Opinion filed December 3, 1982.

*H. Dean Cotton,* attorney, Kansas Department of Human Resources, argued the cause and was on the briefs for appellant, Kansas Department of Human Resources.

*Michael G. Coash,* of Bond, Bond & Coash, of El Dorado, argued the cause and was on the brief for appellee, First National Bank and Trust Company.

*Alan F. Alderson,* general counsel, Kansas Department of Revenue, argued the cause, and *Craig A. Kreiser,* attorney, Kansas Department of Revenue, was on the brief for appellant, Kansas Department of Revenue.

*Terry L. Fredricks,* attorney, United States Department of Justice, argued the cause, and *Glenn L. Archer, Jr.,* assistant United States attorney general, *Michael L. Paup,* and *Richard Farber,* attorneys, United States Department of Justice, were with him on the brief for appellee, United States of America.

The opinion of the court was delivered by

McFARLAND, J.: This is an interpleader action brought by

plaintiff John Deere Company. The subject matter of the action is excess proceeds from the sale of repossessed inventory of farm equipment. Said inventory had been repossessed by John Deere under a floor-plan agreement after defendant Butler County Implement, a John Deere dealer, defaulted on payments due John Deere. The dispute at trial and before us is among the various defendants, each of which has asserted a competing claim for the funds. The Kansas Departments of Revenue and Human Resources appeal from the judgment of the district court entered in favor of the defendant First National Bank and Trust Company. No appeal has been taken by any party from the award to defendant United States of America of two other accounts and an insurance premium refund which were also interpleaded. Hence only the award to the Bank is before us.

The $4,359.40 claim of the Department of Human Resources is based upon contributions, penalty and interest due under the employment security law, K.S.A. 44-701 *et seq.* The $14,905.20 claim of the Department of Revenue is based upon unpaid sales and withholding taxes. The claim of the Bank is upon security agreements and exceeds the fund herein. The interpleaded proceeds are in the amount of $67,954.69. Clearly the proceeds are insufficient to satisfy all claims. The question is one of priority.

The issues raised herein divide into two categories: (1) those relating to whether K.S.A. 44-717 grants the Department of Human Resources a preemptive priority for collection of delinquent unemployment contributions under the circumstances herein; and (2) whether the Bank's security agreements granted it security interests in the after-acquired inventory from which the proceeds were derived.

We shall first determine the issues relative to K.S.A. 44-717. The initial point to be considered is whether K.S.A. 44-717(*c*) is applicable to interpleader actions. The statute provides:

"44-717(*c*) **Priorities under legal dissolutions or distributions.** In the event of any distribution of employer's assets pursuant to an order of any court under the laws of this state, including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition, or similar proceedings, contributions or payments in lieu of contributions then or thereafter due shall be paid in full from the moneys which shall first come into the estate, prior to all other claims, except claims for wages of not more than $250 to each claimant, earned within six months of the commencement of the proceedings. In the event of an employer's adjudication in bankruptcy, judicially confirmed extension proposal, or composition, under the federal bankruptcy act of 1898, as amended, contributions then or

thereafter due shall be entitled to such priority as is provided in that act for taxes due any state of the United States."

Human Resources contends that K.S.A. 44-717(c) applies to interpleader actions and grants it a preemptive priority over all other claims including those of secured creditors. Is K.S.A. 44-717(c) applicable to interpleader actions? We believe not.

*State v. Mauritz-Wells Co.,* 170 S.W.2d 625 (Tex. Civ. App.), *aff'd* 141 Tex. 634, 175 S.W.2d 238 (1943), involves a statute remarkably similar to K.S.A. 44-717(c). Humble Oil and Refining Company was holding $14,887.06 which it owed to Tyler Construction Company. Thirty Tyler creditors made conflicting claims to the money being held. Among these parties was the State of Texas which asserted a claim for unpaid contributions under the Texas unemployment compensation act. Humble Oil filed a bill of interpleader seeking to have all such parties interpleaded so that their rights to participate in the fund might be determined and thereby avoid the risk of double liability.

In *Mauritz-Wells* the Texas Court of Civil Appeals reasoned:

"It will be noted that the foregoing statute does not, upon its face, purport to apply to a stakeholder's suit. On the contrary, it purports to apply to proceedings which contemplate the winding up of affairs of a business, whether corporate or unincorporated. The 'distributions' instanced in the foregoing statute are only such as are ordered in (1) receiverships, (2) assignments for benefit of creditors, (3) adjudicated insolvency, (4) composition, and (5) similar proceedings. A stakeholder's suit is not ejusdem generis with, does not belong to the same general class as, the proceedings enumerated in the foregoing statute. A stakeholder's suit differs from the proceedings mentioned in the statute in that it is brought primarily for the benefit of an innocent stakeholder who, through no fault of his own, will be subjected to double liability unless the rival claimants to the particular property or a particular fund in his hands are required to present their rival claims in a single proceeding. Likewise, the judgment rendered in a stakeholder's suit, determining the relative merits of the rival claims to participate in the fund in the hands of the stakeholder, is not so much an order distributing such fund as it is an action protecting the stakeholder against the risk of double liability. Of course, as a mere incident to protecting the stakeholder against double liability, the fund is ordered distributed as the interest of the parties to said suit is made to appear. However, such considerations as induced the Legislature to provide in the aforesaid statute for the State to be paid 'contributions' owed to it, where distributions are ordered in receiverships, assignments for benefit of creditors, etc., would not operate to induce the Legislature to make similar provision in a stakeholder's suit. This is but another way of stating that *a stakeholder's suit is not a 'similar proceeding' to the proceedings listed in the statute.* Besides, it is wholly foreign to the nature and the purpose of a stakeholder's suit to provide that a claim against the stakeholder should arise and be created in consequence of such suit. *A stakeholder's suit is for the purpose of*

*determining existing rights and priorities among those made parties defendant, not for the purpose of creating such."* 170 S.W.2d at 627-28. (Emphasis supplied.)

It should be noted "stakeholder's suit" and "interpleader action" are interchangeable terms for the same type of proceeding. See Black's Law Dictionary 1259 (5th ed. 1979).

The Texas Supreme Court, in affirming the Court of Civil Appeals, reasoned:

"The Court of Civil Appeals correctly held that Article 5221b-12 does not apply to a stakeholder's suit. It also correctly held that such statute applies to proceedings which contemplate the winding up of affairs of a business, whether corporate or unincorporated; and that the 'distributions' described in such statute are only such as are ordered in (1) receiverships, (2) assignments for benefit of creditors, (3) adjudicated insolvency, (4) composition, and (5) similar proceedings. . . . This was not a distribution of an employer's assets, but was merely the determination of the priority of right to payment out of a particular fund. The statute does not deal with the priorities as to a particular fund, but deals with distribution of an employer's assets, which necessarily means a distribution of all of the employer's assets, other than exempt property.

"This is made plain when the entire statute is read, because it refers to receiverships, assignments for the benefit of creditors, adjudicated insolvency, composition, or similar proceedings, as these deal, not with a few of the assets, but with all of the assets, other than exempt property. These proceedings generally have the effect of relieving the debtor from the payment of further sums. In the present instance each of the creditors, including the State of Texas, was given a judgment against the debtor for the payment of his respective claim. The distribution referred to in this statute is a distribution of an employer's assets, and not merely a determination as to who has a prior right to a particular asset. This contemplates a distribution of all of the assets.

". . . . . 'In the event of any distribution of *an employer's assets* pursuant to an order of any court' . . . we think shows that it applies only when all of an employer's assets are being distributed. In order to hold that the statute applies to the case before us, we would have to read the words 'part of' into the text immediately prior to the words 'an employer's assets.'

"It seems plain that the clause 'including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition or similar proceedings,' operates as a limiting clause upon the first part of the statute above quoted. It is a settled rule that the express mention or enumeration of one person, thing, consequence, or class is equivalent to an express exclusion of all others." 141 Tex. at 638-39.

A like result was reached under similar facts and statute in the Pennsylvania case of *Reconstruction Finance Corp. v. Fallston Co.,* 53 Pa. D. & C. 226 (1944).

81 C.J.S., Social Security § 202, p. 389, states:

"Under some of the unemployment compensation statutes priority is given to

such contributions or taxes in the event of a distribution of an employer's assets by order of court, including any receivership, assignment for benefit of creditors, insolvency, composition, or similar proceeding. *Such statutes apply only to proceedings which contemplate the winding up of affairs of a business, whether corporate or unincorporated. They do not apply to a stakeholder's suit,* or a garnishment proceeding, or to the distribution by a sheriff of the proceeds of a sale by him of property of the employer under a fieri facias." (Emphasis supplied.)

We find the rationale of the Texas courts compelling. We therefore conclude an interpleader action is not *ejusdem generis* with, *i.e.,* does not belong to the same general class as, proceedings contemplating the winding up of affairs of a business such as distributions in receiverships, assignments for benefit of creditors, adjudicated insolvency, composition, and similar proceedings referred to in K.S.A. 44-717(*c*). K.S.A. 44-717(*c*) is therefore held to be inapplicable to interpleader actions. Accordingly the Department of Human Resources' claim, based on unpaid employment security contributions, is entitled to no priority under K.S.A. 44-717(*c*).

The next point is whether K.S.A. 44-717(*c*) grants Human Resources a simple priority or preemptive priority herein. Or, put in other words, does the priority so granted extend only to other unsecured claims or to all claims whether secured or unsecured? By virtue of having just concluded that K.S.A. 44-717(*c*) is inapplicable to the interpleader action before us, we do not reach this question.

The final point raised by Human Resources relative to K.S.A. 44-717 is whether the trial court erred in reading K.S.A. 44-717(*c*) and (*e*) together. Section (*e*) of the statute provides a detailed procedure whereby Human Resources may perfect a lien for unpaid contributions, said lien being entitled to priority over *subsequently* filed liens. Human Resources has, in fact, perfected a lien under K.S.A. 44-717(*e*) but said lien is later in time to that of the Bank. Human Resources concedes any liens filed prior to its lien are prior in right. In order to take priority over the Bank, Human Resources is asserting it has a wholly separate preemptive priority under K.S.A. 44-717(*c*).

Human Resources' contention that the trial court erroneously "read" the two statutes together is predicated upon the following language from the trial court's memorandum decision:

"The State bases its claim upon K.S.A. 44-717(c) and argues that (c) and (e) are independent and are not to be read together.

"I do not agree with this position and am of the opinion that both sections of the statute must be considered in light of the facts in this case."

It appears highly appropriate for the trial court to consider both sections of the statute. The contention of Human Resources that K.S.A. 44-717(*c*) afforded it a preemptive priority over even secured creditors without regard to any time sequence is quite inconsistent with K.S.A. 44-717(*e*) which requires Human Resources to comply with rather complex procedures before it may assert a lien that only takes priority as to subsequently perfected liens.

In any event, our conclusion that K.S.A. 44-717(*c*) is not applicable to interpleader actions disposes of any issue which may or may not have been involved on this point. The trial court reached the right result in concluding K.S.A. 44-717(*c*) was inapplicable to the action herein. Reversible error therefore cannot be predicated on what the trial court did or did not consider or read together in reaching said legal conclusion. See *Taylor v. Department of Health & Environment,* 230 Kan. 283, 286, 634 P.2d 1075 (1981), and *Farmers State Bank v. Cooper,* 227 Kan. 547, 608 P.2d 929 (1980). We need not delve further into this rather obscure claim of error.

We turn now to the issue raised by both appealing state departments which, by virtue of their united front on this issue, shall henceforth be referred to as the "Departments." The issue is whether the security interests of defendant Bank attached to after-acquired inventory proceeds under the Uniform Commercial Code.

There were two security agreements, executed in 1973 and 1977 respectively. There is no claim the earlier agreement merged into or was superseded by the later agreement. In fact, the 1973 agreement was renewed subsequent to the execution of the 1977 agreement. There is no claim that either agreement is defective for lack of following proper filing procedures. Each agreement utilizes different terminology in describing the collateral.

Resolution of this issue involves the application of the following two statutes:

"84-9-109. **Classification of goods; 'consumer goods'; 'equipment'; 'farm products'; 'inventory.'** Goods are

. . . .

"(2) 'equipment' if they are used or bought for use primarily in business

(including farming or a profession) or by a debtor who is a nonprofit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods;

. . . .

"(4) 'inventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment."

and in K.S.A. 1981 Supp. 84-9-110:

"84-9-110. **Sufficiency of description.** Except in the case of a description of real estate concerned with goods which are or are to become fixtures (section 84-9-402), for purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

The Departments contend the language utilized in both security agreements is legally insufficient pursuant to K.S.A. 1981 Supp. 84-9-110 to include after-acquired inventory and that the trial court erred in holding otherwise. By virtue of the different terminology employed in describing the collateral in each security agreement, we must give separate consideration to each agreement.

We shall first consider the security agreement executed August 19, 1977, which provides in relevant part:

"The undersigned and each of the undersigned grant to The First National Bank & Trust Company ('Bank') a security interest in the following property and any and all increases, additions, accessions, substitutions and proceeds thereto and therefor (herein called 'Collateral'):

"All inventory per balance sheet dtd. 6/30/77 (Consumer products, rental equipment, John Deere parts, other merchandise) marked Exhibit 'B'

"All new equipment per attached Exhibit 'A'

"All used equipment per attached Exhibit 'A'"

Exhibit "A" consists of a list of 29 pieces of farm equipment captioned "Paid for Goods (New) as of August 15, 1977." Following said list are three pages of itemized pieces of farm equipment captioned "Used Equipment as of August 15, 1977." Exhibit "B" is a handwritten list of innumerable lower valued items such as tires, attachments for farm equipment, hose kits, brackets, etc.

Looking at the 1977 description of collateral including exhibits "A" and "B" there is nothing included therein which even inferentially indicates that after-acquired inventory is to be included in the collateral. Rather, the contrary is evinced—that the

collateral consisted solely of specifically listed goods then physically in the possession of the debtor implement dealer.

We have no hesitancy in concluding that the collateral designated in the 1977 security agreement does not include after-acquired farm equipment inventory. Accordingly the trial court erred in awarding the Bank a priority in the interpleaded fund based on the 1977 security agreement.

The description of the collateral in the 1973 security agreement is considerably different, providing in relevant part:

"The undersigned and each of the undersigned grant to The First National Bank & Trust Company ('Bank') a security interest in the following property and any and all increases, additions, accessions, substitutions and proceeds thereto and therefor (herein called 'Collateral'):

"Security interest in all equipment, used equipment and parts inventory and accounts receivable now owned and hereafter acquired by Borrower, subject only to present and future liens in favor of John Deere on John Deere Floor planned equipment and/or John Deere parts inventory. SEE ATTACHED EXHIBIT 'A'."

Exhibit "A" is set forth in full except for values and serial numbers, as follows:

EXHIBIT A

TRUCKS:

YEAR MAKE
1966 Chevrolet
1965 Chevrolet
1968 Ford
1970 Chevrolet
1972 Chevrolet

MISC. EQUIPMENT:
Diesel Test Stand
Disk Grinder
A-Frame (built in shop)

OFFICE EQUIPMENT:
Electric Calculator (new)
Desk
Typewriter (used)
Cash Register
Chair
Adding Machines
Filing Cabinets
Safe

USED EQUIPMENT:
Combines:	1966 John Deere 95
1966 John Deere 95
1966 John Deere 95
John Deere 95

|            |                      |
|------------|----------------------|
|            | John Deere 95        |
|            | IHC 403              |
|            | A.C. Glesner         |
|            | IHC 157              |
|            | IHC 141              |
| Balers:    | New Holland 277      |
|            | 1968 N. H. 275       |
|            | 1972 John Deere 346  |
|            | A.C. Roto baler      |
|            | New Holland 282 T    |
|            | John Deere #10       |
|            | John Deere 214 T     |
|            | John Deere 24 T      |
|            | John Deere 224 WS    |
|            | John Deere 24 T      |
|            | A.C. 444W            |
| Tractors:  | John Deere 3020 L.P. |
|            | 1966 John Deere 3020 G |
|            | 1961 John Deere 4010 D |
|            | John Deere 70        |
|            | John Deere 201D      |
|            | John Deere 830D      |
| Windrower: | Hesston 220          |
|            | New Holland          |

Notably absent from Exhibit "A" is any mention of the implement company's inventory of new farm equipment.

It should be observed before proceeding further that the opening paragraphs of both the 1973 and 1977 security agreements are identical by virtue of the fact that this particular paragraph was printed on the form used for both agreements.

Clearly the new John Deere farm equipment which defendant implement company was in the business of selling at retail properly should have been classified as "inventory" rather than "equipment" to be in conformity with K.S.A. 84-9-109. Is this misclassification fatal to the Bank's claim of a secured claim herein? We believe not.

For convenience the description of the 1973 collateral is repeated as follows:

"Security interest in all equipment, used equipment and parts inventory and accounts receivable now owned and hereafter acquired by Borrower, subject only to present and future liens in favor of John Deere on John Deere Floor planned equipment and/or John Deere parts inventory. SEE ATTACHED EXHIBIT 'A'."

In determining whether the collateral description is sufficient to include after-acquired inventory of John Deere farm equip-

ment despite a technical misclassification under K.S.A. 84-9-109, a reasonable approach should be utilized. K.S.A. 1981 Supp. 84-9-110 provides that the description is sufficient if it *reasonably* identifies what is described.

The Kansas Comment following K.S.A. 84-9-110 states:

"The requirement of description is to make identification of the personal property or real estate possible and the test of sufficiency is simply that the description make possible the identification of the thing described. The test is therefore one of 'reasonable identification.'

"Kansas is in substantial accord. The description must be such as will enable third persons, aided by reasonable inquiries which the instrument itself suggests, to identify the property. Even though the instrument lacks details, if it gives clues sufficient that third persons by reasonable care and diligence may ascertain the property covered, it is adequate."

The debtor herein was a retail dealer in farm equipment. "Equipment" is a term commonly utilized to describe the type of product an implement dealer normally sells at retail. "Now owned and hereafter acquired" obviously refers to all four categories preceding the phrase—not just to "accounts receivable." The security interest of the Bank was expressly made "subject only to present and future liens in favor of John Deere on John Deere Floor planned equipment and/or John Deere parts inventory." "Floor plan" is a term used to describe a method of financing the purchase of inventory—not equipment as that term is used in K.S.A. 84-9-109. The collateral description acknowledges the Bank's security interest is subject to "future liens in favor of John Deere." This is wholly consistent with the concept of the collateral being inventory which, by its very nature, is always in a state of change.

Although not condoning the careless draftsmanship giving rise to this issue, we conclude that the description of the collateral in the 1973 Security Agreement is sufficient to include the after-acquired John Deere farm equipment inventory whose repossession and sale resulted in the creation of the stake interpleaded herein. There is indication in the record that the Bank's claim based on the 1973 secured transaction is, by itself, in excess of the interpleaded fund. If so, then the decision herein will not alter the trial court's award of the entire fund to the First National Bank and Trust Company. If, however, on remand the trial court determines that the Bank's secured claim is actually less than the

entire interpleaded fund, then the trial court must determine how the balance should be distributed..

The judgment is affirmed in part, reversed in part, and remanded with directions.