(773 P.2d 660)

No. 62,727

BANK OF KANSAS, *Appellee,* v. HUTCHINSON HEALTH SERVICES, INC., a Kansas corporation, and STATE OF KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Defendants,* and CENTRAL STATE BANK, TRUSTEE, *Intervenor,* and STATE DEPARTMENT OF HUMAN RESOURCES OF KANSAS, *Appellant.*

Opinion filed April 21, 1989.

*H. Dean Cotton*, of Topeka, for the appellant.

*David E. Roberts*, of Dennis O. Smith, Chartered, of Hutchinson, for the appellee.

Before RULON, P.J., REES and DAVIS, JJ.

DAVIS, J.: This appeal involves conflicting claims by the Bank of Kansas (Bank) and the State of Kansas to Medicaid reimbursement funds owed by the Kansas Department of Social and Rehabilitation Services (SRS) to Hutchinson Health Services, Inc., (HHS) a nursing home operator. The Bank holds a perfected security interest in HHS' accounts receivable, which include the Medicaid reimbursement funds, based on three loans it made to HHS, which loans are in default. The State of Kansas through the Department of Human Resources (DHR) claims the right of setoff for delinquent unemployment contributions owed by HHS. The trial court held that the Bank's perfected security interest prevailed over the State's right of setoff. We affirm in part, reverse in part, and remand for further proceedings.

The resolution of this case requires us to answer two questions: (1) Whether the priority rules of Article 9 of the Uniform Commercial Code (UCC) apply to a priority battle between a creditor's right of setoff and another creditor's perfected security interest in the debtor's accounts receivable; and (2) if so, what specific rules apply and with what result?

The facts are not in dispute. The Bank made three separate loans to HHS totaling $281,384.58. These loans were secured by a perfected security interest in HHS' accounts receivable, which include Medicaid reimbursement funds.

HHS defaulted. The Bank filed suit on November 16, 1984, and on November 19, 1984, filed an amended petition against HHS and SRS, seeking judgment against HHS on the promissory notes for $186,141.51 plus interest and seeking orders requiring the SRS to pay all of HHS' Medicaid reimbursement accounts to the Bank. DHR intervened in the suit, alleging that HHS owed $14,916.42 in delinquent unemployment contributions and that the State of Kansas was entitled to offset this amount against the Medicaid reimbursement funds owed by SRS to HHS.

On March 15, 1985, the Bank and the DHR entered into an agreed order recognizing that the State of Kansas had acquired by setoff $14,916.42 from the Medicaid reimbursement funds owed to HHS. Both parties agreed that the question of priority to these funds would be reserved for a later determination. The

Bank was granted judgment against HHS for $197,812.42 plus interest. The Medicaid reimbursement funds were then paid into court by SRS and distributed to the Bank in partial satisfaction of its judgment. The trial court held that the Bank's perfected security interest in the Medicaid reimbursement funds had priority over DHR's right of setoff and granted judgment for the Bank for the $14,916.42 plus interest.

Before addressing the questions raised by this appeal, we note that this court has resolved a priority battle between Bank of Kansas and Central State Bank in this same case involving different funds. *Bank of Kansas v. Hutchinson Health Services, Inc.*, 12 Kan. App. 2d 87, 735 P.2d 256, *rev. denied* 241 Kan. 838 (1987). Central State Bank offset the funds in HHS' checking account against debts HHS owed to it, but the Bank of Kansas claimed that it was entitled to the funds because they were identifiable proceeds of HHS' accounts receivable, in which the Bank of Kansas held a perfected security interest. We held that while a bank or other creditor seeking to exercise a right of setoff need not comply with the requirements of Article 9, "the priority as between a right of setoff and a perfected security interest is governed by Article 9." 12 Kan. App. 2d at 93.

(1) Do the priority rules of Article 9 of the Uniform Commercial Code apply to a priority battle between a creditor's right of setoff and another creditor's perfected security interest in the debtor's accounts receivable?

While our previous decision provides a direct answer to our first question, DHR argues that we should limit this holding to priority battles between banks and other financial institutions. Although the previous appeal involved a priority battle between two banks, our holding applies to *any* priority battle involving a right of setoff and a perfected security interest. We again hold that "the priority as between a right of setoff and a perfected security interest is governed by Article 9." 12 Kan. App. 2d at 93.

Both parties advance arguments as to why the above rule should not apply in this case. DHR argues that the priority rules of Article 9 need not be applied to resolve this appeal because it, as an agency of the State, is entitled to "super-priority" under Kansas statutes allowing setoff against debtors of the State (K.S.A. 75-6201 *et seq.*) and the Kansas Employment Security Law (K.S.A. 44-701 *et seq.*). We disagree.

The setoff act specifies the priority to be given to multiple claims by state agencies when the setoff amount is not sufficient to satisfy every claim presented. K.S.A. 75-6211. It does not address the priority of a secured creditor's claim to the same funds.

The Kansas Employment Security Law requires employers to contribute an amount based on their employees' wages to the Employment Security Fund. K.S.A. 1988 Supp. 44-710. If an employer fails to pay, the Secretary of Human Resources may bring a civil action against him to collect the amount owed. K.S.A. 44-717(b). The secretary may also file a lien against "all property and rights to property, whether real or personal, belonging to such employer or person." Such a lien is subject, however, to prior filed liens. K.S.A. 44-717(e).

DHR relies on K.S.A. 44-717(c), which provides:

"In the event of any distribution of employer's assets pursuant to an order of any court under the laws of this state, including but not limited to any probate proceeding, interpleader, receivership, assignment for benefit of creditors, adjudicated insolvency, composition or similar proceedings, contributions or payments in lieu of contributions then or thereafter due shall be paid in full from the moneys which shall first come into the estate, prior to all other claims, except [certain] claims for wages."

The words "but not limited to" and the references to probate proceedings and interpleader actions were added by amendment in 1983. L. 1983, ch. 169, § 8.

In *John Deere Co. v. Butler County Implement, Inc.*, 232 Kan. 273, 655 P.2d 124 (1982), the Supreme Court held that K.S.A. 44-717(c) did not apply to interpleader actions since an interpleader action was not of the same general class as a proceeding winding up the affairs of a business. 232 Kan. at 277. This holding has been overruled by the amendment discussed above.

The Supreme Court, however, also addressed DHR's argument that 44-717(c) afforded it a preemptive priority over secured creditors, even though 44-717(e), dealing with liens, would afford DHR's lien priority over subsequently filed liens only. 232 Kan. at 277. In the words of the court:

"The contention of Human Resources that K.S.A. 44-717(c) afforded it a preemptive priority over even secured creditors without regard to any time sequence is quite inconsistent with K.S.A. 44-717(e) which requires Human Resources to comply with rather complex procedures before it may assert a lien that only takes priority as to subsequently perfected liens." 232 Kan. at 278.

We conclude that K.S.A. 44-717(c) does not give the State of Kansas a super-priority.

The Bank also argues that we need not apply the priority rules of Article 9 to resolve this appeal. It contends that the State's setoff is invalid because DHR allegedly failed to comply with the requirements of the setoff act. This argument fails for two reasons. First, we think that the Bank implicitly recognized that DHR had complied with the requirements of the setoff act when it stipulated that DHR had acquired the Medicaid reimbursement funds by setoff and that the issue in the case was the proper priority to those funds. Second, because the Bank did not raise this issue in the trial court, it cannot raise it now for the first time on appeal. *Kansas Dept. of Revenue v. Coca Cola Co.*, 240 Kan. 548, 552, 731 P.2d 273 (1987).

(2) What specific priority rule in Article 9 applies to the priority question in this case and with what result?

The determination of priorities under Article 9 requires that we identify the respective parties within the context of Article 9. The Bank is a perfected secured party. K.S.A. 1988 Supp. 84-9-105(1)(m); K.S.A. 84-9-303. HHS is a "debtor" since it owes payment of the obligation secured. K.S.A. 1988 Supp. 84-9-105(1)(d). The collateral, HHS' accounts receivable, including the Medicaid reimbursement funds, is an "account" since it represents HHS' right to payment for services rendered. K.S.A. 84-9-106. Since the State is obligated through SRS to pay on the account, that is, to make Medicaid reimbursement payments to HHS, the State is an "account debtor." K.S.A. 1988 Supp. 84-9-105(1)(a).

This appeal involves accounts receivable financing. Accounts receivable financing involves an assignment of the debtor's accounts receivables to the secured party as security for the debtor's obligation. When the account debtor is not informed of the arrangement, as is the case here, the financing is on a "non-notification" basis. The Kansas Comment explains:

"[I]f the assignment is on a 'non-notification' basis, as with the typical security interest in accounts, the secured party does not notify account debtors to make payment direct to it until default of the assignor. Once direct collection is triggered, the secured party can 'take control' of the proceeds, as by crediting checks to the unpaid balance of the assignor's debt." Kansas Comment 1983 to K.S.A. 84-9-502.

In such a case, the assignment can be thought of as taking effect only after the debtor defaults and notice of the assignment is given to the account debtor. See Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 11.01 *et seq.* (2d ed. 1988); Quinn, Uniform Commercial Code Commentary and Law Digest ¶¶ 9-102[A][16], 9-104[A][13], 9-502[A][3-4] (1988 Cum. Supp. No. 2).

The general priority rule in Article 9 is stated in K.S.A. 84-9-201:

"Except as otherwise provided by this act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors."

We applied this rule to resolve the priority battle in *Bank of Kansas v. Hutchinson Heath Services, Inc.,* 12 Kan. App. 2d 87. The parties and the trial court applied the same rule to resolve the present dispute. However, when the setoff is asserted by the account debtor, the priority rule is "otherwise provided" by Article 9.

When an account receivable has been assigned as security, "[t]he account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee." K.S.A. 84-9-318(3). Notification may be made "when so agreed" or "in any event on default." K.S.A. 84-9-502(1).

The date of notification is critical when the claims arise independently of the contract creating the account because it determines what claims the assignee is subject to. K.S.A. 84-9-318(1)(b) provides: "[T]he rights of an assignee are subject to . . . any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment." The Official UCC Comment explains that, when an account debtor has claims against the assignor which arise independently of the contract creating the account, "an assignee is subject to all such claims which accrue before, and free of all those which accrue after, the account debtor is notified." Official UCC Comment No. 1 to K.S.A. 84-9-318. The Kansas Comment explains:

"A financing assignee also takes subject to the account debtor's right of setoff from defenses or claims arising out of *other contracts*, under subsection (1)(b), so

long as the right of setoff accrues before the account debtor receives notification of the assignment." Kansas Comment 1983 to K.S.A. 84-9-318.

The position taken by the comments is supported by two cases from New York, both involving the State's right to set off unpaid taxes against debts the debtor had assigned as security. In the first case, the debtor assigned its right to contract payments from the State Department of Transportation to a bank as security for a loan. The State offset the debtor's uncollected withholding taxes and made only a partial payment to the bank. The bank filed suit and the court of claims granted summary judgment for the State, holding that the State was entitled to assert its claim against the debtor since the claim had accrued prior to the bank's notifying the State of the assignment. *Central State Bank v. State of N.Y.*, 73 Misc. 2d 128, 341 N.Y.S.2d 322 (N.Y. Ct. Cl. 1973).

In the second case, the debtor, an engineering company, contracted to do engineering work for the State. The debtor assigned its right to payment to a bank as security for several loans. After the debtor settled a suit on the contract, the bank demanded payment of the settlement amount from the State. In the subsequent suit, the State asserted offsets for the debtor's unpaid withholding and unemployment insurance taxes. The trial court granted judgment for the bank. The appellate division modified the judgment to allow the offsets, holding that the State, not the Department of Transportation, was the account debtor, that the bank's UCC filing statement did not constitute notification to the State of the assignment, that notification was not given until the bank made a demand on the comptroller for payment, and that the State's claims had accrued prior to this notification. *Mtr of Chase Man Bk v. St of NY*, 48 App. Div. 2d 11, 367 N.Y.S.2d 580 (1975), *aff'd* 40 N.Y.2d 590, 388 N.Y.S.2d 896, 357 N.E.2d 366 (1976).

## RESULT

Applying K.S.A. 84-9-318(1)(b) to this case, we conclude that whether the State of Kansas through DHR may offset its claim for HHS' delinquent unemployment contributions against the funds SRS owes HHS depends on when the State's claim accrued. If the State's claim accrued before the Bank notified SRS of the assignment, the Bank's assignment is subject to the claim. If the State's claim accrued after the Bank notified SRS, the Bank takes free of the claim.

A secured party "notifies" an account debtor "by taking such steps as may be reasonably required to inform the [account debtor] in ordinary course whether or not [the account debtor] actually comes to know of it." K.S.A. 1988 Supp. 84-1-201(26). The record shows that the Bank first notified SRS that it was entitled to payment when it filed its amended petition naming SRS as a defendant on November 19, 1984. Arguably, notice was not "in ordinary course"; however, it is sufficient to satisfy the requirements of the UCC because SRS received actual notice of the Bank's claim. See K.S.A. 84-1-102. We conclude that notice was given on November 19, 1984.

The UCC leaves the definition of when a claim "accrues" to the law under which the claim arose. The Employment Security Law, however, does not expressly state when contributions accrue. In the absence of an express definition, two possibilities suggest themselves. A claim could "accrue": (1) when the obligation to pay is incurred; or (2) when the obligation is actually due and payable. The first definition reflects a fiscal view, appropriate to accounting or tax law. The second definition reflects the more usual sense of accrue, that is, that "a claim or setoff accrues when a cause of action exists." *Seattle-First Nat'l Bk. v. Ore. Pac. Inc.*, 262 Or. 578, 583, 500 P.2d 1033 (1972).

On balance, we believe that the policies of simplicity and commercial certainty underlying the UCC favor the second definition. See K.S.A. 84-1-102. Under the first definition, the value of accounts assigned as security could never be accurately determined because the accounts would always be subject to an independent claim arising against the assignor after the assignment is made, but accruing beforehand. Under the second definition, the value of accounts can be determined with reasonable certainty at the time of the assignment. As the Oregon court noted, an assignment must have "value and stability" to "be used as an effective security device." 262 Or. at 582.

When an unemployment contribution payment is due and payable is specified in the administrative regulations adopted pursuant to law:

"[C]ontributions . . . shall become due on, and shall be paid on or before, the 25th day following the close of the calendar quarter in which the wages are paid." K.A.R. 50-2-3(b).

Thus, HHS' contributions for the third quarter of 1984 were due

on October 25, 1984, before the Bank gave notice, and its fourth quarter contributions were due on January 25, 1985, after the Bank gave notice.

We conclude that State of Kansas through DHR is entitled to offset the amount owed for the third quarter of 1984—approximately $10,122.36—together with any interest or penalties thereon against the money SRS owes to the Bank as HHS' assignee. We further conclude that the security interest of the Bank is superior to the State of Kansas' right of setoff for the amount owed for the fourth quarter of 1984—approximately $4,678.72. On remand, the trial court is directed to compute the exact amounts to which each party is entitled and to enter judgment in favor of the Bank for the amount it is still owed.

Affirmed in part, reversed in part, and remanded with directions.