No. 62,727

BANK OF KANSAS, *Appellee*, v. HUTCHINSON HEALTH SERVICES, INC., a Kansas corporation, and THE STATE OF KANSAS, DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Defendants*, and THE CENTRAL STATE BANK, Trustee, *Intervenor*, and THE STATE DEPARTMENT OF HUMAN RESOURCES OF KANSAS, *Intervenor/Appellant*.

(785 P.2d 1349)

Opinion filed January 19, 1990.

*H. Dean Cotton*, general counsel, of Department of Human Resources, argued the cause, and *Glenn H. Griffeth*, of Department of Human Resources, was with him on the briefs for appellant.

*David E. (Rick) Roberts*, of Dennis O. Smith, Chartered, of Hutchinson, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

PAUL E. MILLER, District Judge, assigned: This case is a priority battle between the Bank of Kansas (Bank), which has a perfected security interest in Hutchinson Health Services, Inc.'s

(HHS) accounts receivable, and the Kansas Department of Human Resources (DHR), which claims a right to set off HHS' delinquent unemployment contributions against funds owed to the debtor by the Kansas Department of Social and Rehabilitation Services (SRS) for Medicaid cost reimbursements.

The Bank made three separate loans to HHS totaling $281,384.58. The loans were secured by a perfected security interest in HHS' accounts receivable, including Medicaid reimbursement funds owed to HHS by SRS. HHS defaulted on the loans. On November 19, 1984, the Bank filed its amended petition against HHS and SRS, seeking judgment against HHS on the promissory notes for $186,141.51 and seeking an order requiring SRS to pay the Bank all previously withheld Medicaid payments.

Central State Bank intervened in the action. On November 6, 1984, HHS had deposited a check in the amount of $100,864 for Medicaid cost reimbursements from the State of Kansas into its checking account at Central State Bank. On November 19, Central State Bank declared itself insecure and set off the $26,229 that was remaining in HHS' account against debts owed to Central State by HHS. The trial court held that Central State's right of setoff was superior to the Bank's security interest and certified that judgment pursuant to K.S.A. 1988 Supp. 60-254(b). On appeal, the Court of Appeals reversed, holding that Article 9 of the UCC governed the priority as between a perfected security interest and a right of setoff and that the Bank had priority over Central State Bank. *Bank of Kansas v. Hutchinson Health Services, Inc.,* 12 Kan. App. 2d 87, 735 P.2d 256, *rev. denied* 241 Kan. 838 (1987).

DHR also intervened, alleging that HHS owed $14,916.42 in delinquent unemployment contributions and that DHR was entitled to set off this amount against any funds owed to HHS by SRS. On March 15, 1985, the Bank and DHR entered into an agreement regarding these funds, which provided:

"1. Both parties recognize that Intervenor State of Kansas Department of Human Resources has acquired by setoff $14,916.42 from the funds held by State of Kansas Department of Social and Rehabilitation Services on behalf of Defendant Hutchinson Health Services, Inc.

"2. The proper priority to these funds shall be determined by the court at a later date.

"3. The Plaintiff and State of Kansas Department of Human Resources reserve the right to challenge the priority of these funds."

SRS subsequently paid $105,607.79, representing the remaining accounts receivable of HHS being held by SRS, to the Clerk of the District Court for Reno County. Those funds were subsequently distributed to the Bank in partial satisfaction of its claim against HHS. On May 16, 1985, the trial court granted judgment for the Bank against HHS in the amount of $197,812.42 plus interest.

Both the Bank and DHR moved for summary judgment as to the remaining $14,916.42. The district court originally granted summary judgment in favor of DHR on December 2, 1986, finding that 42 U.S.C. § 1396a(a) (1982) prohibits assignment of payments under a state plan for medical assistance and, therefore, the Bank could have no perfected security interest in the accounts receivable from SRS. No journal entry was ever filed. On January 13, 1988, the Bank filed a motion to reconsider the judgment, citing the Court of Appeals' holding in *Bank of Kansas,* 12 Kan. App. 2d 87, Syl. ¶ 1:

"42 U.S.C. § 1396a(a)(32) (1982), which requires a state medicaid plan to provide that no medicaid reimbursement payment shall be made under an assignment to anyone other than the individual providing medical care, does not prohibit a medical care provider from using medical reimbursement payments as collateral for bank loans."

The district court then found in favor of the Bank on February 4, 1988, and a journal entry to that effect was filed on March 1, 1988. The district court subsequently denied DHR's motion to alter or amend and DHR filed a timely notice of appeal.

On appeal, DHR argued that, pursuant to K.S.A. 84-9-104(i), Article 9 of the UCC does not apply to rights of setoff and, therefore, the *Bank of Kansas* decision should be reversed or should be limited on its facts. DHR also asserted that its right of setoff was superior to the rights of the Bank and that it had a "super priority" pursuant to either K.S.A. 75-6201 *et seq.* or K.S.A. 44-717. The Bank argued that Article 9 should be applied to determine priority between DHR and the Bank; that DHR does not have a common-law right of setoff; that DHR does not have a right of setoff under K.S.A. 75-6201 *et seq.*; and that

K.S.A. 44-717 does not give DHR lien rights superior to the perfected security interest of the Bank.

The Court of Appeals first reiterated its holding in the earlier *Bank of Kansas* case that, while a creditor who is seeking to exercise the right of setoff need not comply with the requirements of Article 9, the priority as between the right of setoff and a perfected security interest is governed by Article 9. *Bank of Kansas v. Hutchinson Health Services, Inc.*, 13 Kan. App. 2d 421, 423, 773 P.2d 660 (1989) (citing *Bank of Kansas*, 12 Kan. App. 2d at 87.). The court further found that DHR was not provided with a super-priority under K.S.A. 44-717(c). 13 Kan. App. 2d at 425.

The resolution of two issues will determine the outcome of this appeal. Those issues are: (1) whether DHR had a right to set off the funds owed to HHS by SRS, and (2) which party has priority in its claim to the funds in question.

DHR argues that K.S.A. 75-6201 *et seq.* gives it a right of setoff. K.S.A. 75-6201 states: "The purpose of this act is to establish as policy that state agencies shall cooperate in identifying debtors who owe money to the state and that procedures be established for setting off against debtors the sum of any debt owed to the state." The article goes on to establish the circumstances under which the right to set off is granted and the procedures to be followed by the state agencies to exercise that right. Pursuant to K.S.A. 75-6204, where a debt is owed to the State of Kansas or any state agency, the Director of the Division of Accounts and Reports of the Department of Administration may set off the debt against money owed to the debtor by the state or any state agency. According to DHR, HHS owed it $14,916.42 in unemployment taxes for the third and fourth quarters of 1984. DHR made two separate requests for setoff to the Division of Accounts and Reports, the first on December 7, 1984, for the third quarter taxes due, and the second on January 11, 1985, for fourth quarter taxes due. The record does not document that the Division of Accounts and Reports did, in fact, set off all of the claimed funds, but, as stated above, the Bank and DHR stipulated that such setoff had taken place.

The Bank argues that DHR and the Division of Accounts and Reports had not complied with the procedural requirements of

the statute. It argues that DHR failed to properly certify the amounts due to the Director of Accounts and Reports and further that only the director may provide the statutorily required notices to the debtor. The Bank claims that, since all correspondence relating to the setoff was between DHR and the staff of Accounting Systems and Procedures of the Division of Accounts and Reports, the setoff must fail because the procedural requirements specify that any action must be taken by the director.

The Court of Appeals held that the Bank's argument failed for two reasons. First, it found that the Bank had implicitly recognized compliance with the procedures when it stipulated that DHR had acquired the funds by setoff. Second, it found that the Bank, not having raised the issue in the trial court, could not raise the issue on appeal. *Bank of Kansas v. Hutchinson Health Services, Inc.*, 13 Kan. App. 2d at 425.

We disagree. Our view of the stipulation entered by the Bank and DHR is not that the Bank conceded that the setoff was *properly* accomplished, but rather only that it had been accomplished. Further, the stipulation provided that the priority of claims to the funds remained in issue. We believe this stipulation to be sufficient to allow the Bank to contest alleged procedural irregularities.

That having been decided, however, we cannot accept the Bank's argument that the director himself must be personally involved in every setoff transaction that arises under K.S.A. 75-6201 *et seq.* K.S.A. 75-3727a created the Division of Accounts and Reports as part of the Department of Administration. The statute provides that the director shall be the "head" of the division with the duty to administer the division. Clearly, the statute contemplates the hiring of employees and the delegation of duties thereto in order to carry out the functions of the division. We hold, therefore, that the director himself need not personally attend to all duties of the division. Rather, he or she has authority to delegate such duties as are necessary to fulfill the division's statutory obligations. We further hold that DHR has the statutory right to set off the funds owed HHS by SRS so long as procedures are complied with.

Such holding is not, however, determinative of the question of which party is entitled to the funds. The Bank claims entitle-

ment based upon its security interest in the accounts receivable of HHS, which security interest predates the claims of DHR for taxes due. DHR, on the other hand, claims it has a "super-priority" to the funds by virtue of K.S.A. 44-717(c). That statute reads in pertinent part:

"In the event of any distribution of employer's assets pursuant to an order of any court under the laws of this state, including but not limited to any probate proceeding, interpleader, receivership, assignment for benefit of creditors, adjudicated insolvency, composition or similar proceedings, contributions or payments in lieu of contributions then or thereafter due *shall be paid in full from the moneys which shall first come into the estate, prior to all other claims,* except claims for wages of not more than $250 to each claimant, earned within six months of the commencement of the proceedings."

DHR claims this section is to be read independent of K.S.A. 44-717(e)(1), which reads in part:

"If any employer or person who is liable to pay contributions, payments in lieu of contributions or benefit cost payments neglects or refuses to pay the same after demand, the amount, including interest and penalty, shall be a lien in favor of the state of Kansas, secretary of human resources, upon all property and rights to property, whether real or personal, belonging to such employer or person. Such lien shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the secretary of human resources in the office of register of deeds in any county in the state of Kansas, in which such property is located, and when so filed shall be notice to all persons claiming an interest in the property of the employer or person against whom filed."

The Bank argues that the two subsections must be read together and that, in order for DHR to be paid first from the distribution of an employer's assets, the notice requirements of subsection (e) must be complied with. The Bank goes on to claim that, since DHR failed to comply with the notice requirements, it has no lien on the funds in question.

In *John Deere Co. v. Butler County Implement, Inc.,* 232 Kan. 273, 655 P.2d 124 (1982), this court held that K.S.A. 44-717(c) did not apply to interpleader actions. In response to *John Deere,* the legislature amended the statute to specifically include interpleader actions (the statute appears as amended above). Because the *John Deere* court had found that the statute did not apply to interpleader actions, this court did not have to address any

other issues as to the applicability of the statute. This court, however, commented:

"It appears highly appropriate for the trial court to consider both sections of the statute. The contention of Human Resources that K.S.A. 44-717(c) afforded it a preemptive priority over even secured creditors without regard to any time sequence is quite inconsistent with K.S.A. 44-717(e) which requires Human Resources to comply with rather complex procedures before it may assert a lien that only takes priority as to subsequently perfected liens." 232 Kan. at 278.

In *John Deere,* writing for a unanimous court, Justice McFarland stated:

"We therefore conclude an interpleader action is not *ejusdem generis* with, *i.e.,* does not belong to the same general class as, proceedings contemplating the winding up of affairs of a business such as distributions in receiverships, assignments for benefit of creditors, adjudicated insolvency, composition, and similar proceedings referred to in K.S.A. 44-717(c). K.S.A. 44-717(c) is therefore held to be inapplicable to interpleader actions." 232 Kan. at 277.

The rules for statutory construction were discussed in *Trego WaKeeney State Bank v. Maier,* 214 Kan. 169, Syl. ¶ 4, 519 P.2d 743 (1974):

"The rule of *ejusdem generis* is a well known maxim of construction to aid in ascertaining the meaning of a statute or other written instrument which is ambiguous. Under the maxim, where enumeration of specific things is followed by a more general word or phrase, such general word or phrase is held to refer to things of the same kind, or things that fall within the classification of the specific terms."

See *Stephens v. Van Arsdale,* 227 Kan. 676, 684, 608 P.2d 972 (1980).

The instant case was brought by the Bank to collect on a secured note. It does not "belong to the same general class as," and thus is not *"ejusdem generis"* with those types of actions contemplated by K.S.A. 44-717(c). Thus the priority granted to DHR under that statute has no applicability here. We, therefore, need not reach the issue of whether K.S.A. 44-717(e)(1) must be read in conjunction with or independently of K.S.A. 44-717(c).

Turning now to the issue of priority, we review the decision of the Court of Appeals. The Court of Appeals resolved the dispute by applying a theory which had not been advanced by either party. The court cited the 1983 Kansas Comment to K.S.A. 84-9-318: "A financing assignee also takes subject to the account

debtor's right of setoff from defenses or claims arising out of *other contracts,* under subsection (1)(b), so long as the right of setoff accrues before the account debtor receives notification of the assignment."

The Court of Appeals found that the State was an "account debtor" of HHS by virtue of the Medicaid payments due from SRS, and, therefore, K.S.A. 84-9-318(1)(b) applies to this case. An account debtor is "the person who is obligated on an account, chattel paper or general intangible." K.S.A. 84-9-105(1)(a).

Having determined that the State was an account debtor by virtue of the funds owed the Bank by SRS, the court found that the State through DHR could offset its claim for delinquent un-employment contributions against the funds owed to the Bank by SRS. The Court of Appeals reasoned that resolution of the case depended on when DHR's claims against HHS accrued. The court adopted the view that a setoff accrues when the obligation is actually due and payable or when a cause of action exists. 13 Kan. App. 2d at 428. The court concluded that the Bank had given notice of its assignment to DHR on November 19, 1984, the day that the Bank filed its amended petition, naming SRS as a defendant. While we disagree that filing suit against one state agency automatically imparts notice to another, we have determined that the timing of DHR's receipt of notice of the Bank's security interest makes no difference, as will hereafter be explained.

The court then concluded that HHS' obligation for unemploy-ment taxes for the third quarter of 1984 (approximately $10,122.36) accrued on October 25, 1984, and its obligation for unemployment taxes for the fourth quarter (approximately $4,678.72) of 1984 accrued on January 25, 1985. See K.A.R. 50-2-3(b). Therefore, the court found that DHR had priority as to $10,122.36 and the Bank had priority as to $4,678.72. That the exact timing of DHR's notice of the Bank's security interest does not affect the outcome of this case is seen by the fact that DHR's claim for third quarter taxes had accrued prior to filing of the original petition on November 16.

K.S.A. 84-9-318(1) provides:

"Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in section 84-9-206 the rights of an assignee are subject to

"a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

"b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment."

There is no showing in the record on appeal that DHR had notice of the Bank's security interest prior to October 25. Further, there is no showing in the record that DHR complied with the requirements of K.S.A. 75-6206 with regard to the fourth quarter taxes which accrued on January 25, 1985. In fact, DHR filed its answer on January 24, one day prior to the fourth quarter taxes becoming due.

In *Central State Bank v. State,* 73 Misc. 2d 128, 341 N.Y.S.2d 322 (N.Y. Ct. Cl. 1973), a bus company had a contract with the New York State Park Commission to provide bus service between points in Brooklyn and Manhattan to several state parks. Central State Bank had a security interest in the bus company's accounts receivable and contract rights. The bank, as assignee of the bus company's contract rights, sued the State for money owed under the contract. The State asserted a setoff for uncollected withholding taxes due from the bus company.

The Court of Claims of New York held:

"The circumstances presented here do not give rise to an issue of priority of liens. This is not a situation where two creditors with perfected interests are competing to subordinate the other's right to attach proceeds belonging to and held by the debtor. [Citation omitted.] Neither do the facts disclose an effort by the State to attach proceeds in the hands of a third party. Rather, the State holds the fund against which it desires to debit a sum the assignor concededly owes the State.

"The State, as an 'account debtor,' may lawfully assert in this proceeding any claim or defense it has against the assignor which accrued before it received notice of the assignment. [U.C.C. § 9-318(1)(b).] The rights acquired by claimant pursuant to its assignment are no greater than those of its assignor. [Citation omitted.]

"Since the State's claim arose when the taxes became due it would be patently unfair to require the State, in order to perfect its claim against a fund it now holds, to first file a warrant. Therefore, for the purposes of ascertaining the amount of the setoff, the period in which these taxes became due will control.

"In view of the fact the right to taxes accrued before the State had notice of the assignment and the aggregate amount of these taxes is greater than

the proceeds upon which claimant seeks judgment, claimant's motion for summary judgment must be denied." 73 Misc. 2d at 129-30.

We believe the logic of *Central State Bank* to be sound, and we conclude that the Court of Appeals was correct in its analysis of this case. DHR is entitled to those funds which represent third quarter 1984 taxes, and the Bank is entitled to those funds which represent fourth quarter 1984 taxes.

The judgment of the Court of Appeals is affirmed; the judgment of the district court is affirmed in part and reversed in part, and the case is remanded to the trial court with instructions to compute and distribute the amounts held by it which are due each party.

SIX, J., not participating.